**STATE of Tennessee, Appellee,**

v.

**William Wesley GOAD, Jr., Appellant.**

Supreme Court of Tennessee,
at Nashville.

March 24, 1986.

John Wesley Jones, John Pellegrin, Gallatin, for appellant.

Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville (W.J. Michael Cody, Atty. Gen. & Reporter, Lawrence Ray Whitley, Dist. Atty. Gen., Wayne Hyatt, Asst. Dist. Atty. Gen., Gallatin of counsel), for appellee.

## OPINION

HARBISON, Justice.

Appellant was convicted of murder in the perpetration of an armed robbery and sentenced to death by electrocution. His counsel have presented seventeen issues on appeal. After careful consideration of the record and the briefs, we find no merit in sixteen of these, but because of an incomplete record we are unable to determine whether the remaining issue has merit or not. The present record fully justifies both the conviction and the death sentence, but because of a lack of clarity in the record on one issue, we remand the case to the trial court for further consideration and appropriate disposition.

There is almost no dispute as to the material facts. Appellant offered no evidence in his defense at the guilt phase of the trial. Although he offered four witnesses at the sentencing hearing, he did not personally testify. There is no challenge to the sufficiency of the convicting

evidence, so that the facts may be briefly summarized.

On the morning of February 14, 1983, the body of 38-year-old John Crawford was discovered at about 6:30 a.m. by his brother Archie Ray Crawford. The two brothers worked for a fireworks store and market and had done so for about twelve years. They alternated their work shifts, and at the time in question John Crawford was working at night. He had relieved his brother at about 5:30 p.m. on the previous evening. When Archie Crawford returned to work on the next morning he found his brother seated in a chair, apparently dead, with a gunshot wound in the rear left portion of his neck. Archie had last seen his brother alive the preceding evening, but John's wife testified that she had spoken with her husband over the telephone at about 9:30 p.m. on the evening of February 13.

The cash register was open and all of the currency had been removed. One of the victim's pockets was pulled out, and apparently his personal funds had been stolen also. He had apparently cashed his paycheck for the previous week out of funds in the cash drawer because the check was found there, but the cash which he had taken in exchange was missing. A total of about $575 had been taken from the store and from the victim.

Appellant was about 35 years of age at the time of the trial. He had been reared in Maury County, Tennessee, and had entered military service shortly after his graduation from high school in Mount Pleasant. He served for about two years in the armed services, one portion being in Europe and the other in Vietnam. After his return from service he had been married three times. He was shown to have been subject to drug abuse to some extent, had been convicted of six major felonies and had been incarcerated for some time as a result of these convictions. He had no history of mental illness or of treatment for drug abuse. He was evaluated prior to

trial at a state mental health facility and found to be competent to stand trial. No plea of insanity was interposed, nor was there any specific claim of diminished mental capacity. At the sentencing hearing, however, it was contended that his personality had "changed" since his return from military service, and apparently his career of crime and poor citizenship was attributed to his military experiences.

Appellant was arrested in connection with this case while he was in Panama City, Florida, on April 6, 1983, about seven weeks after the body of the victim was discovered. He was found to be in possession of a two-shot .38 caliber Rohm derringer, having two barrels, one over the other. Ballistics tests subsequently revealed that the bullet recovered from John Crawford's body had been fired from this weapon. In addition, Edna Faye Rogers, who had owned the derringer, testified that on about February 9 or 10, 1983, she had loaned it to the appellant Goad, with whom she had previously been acquainted. When he did not return it she called him, and he delivered it to her on the evening of February 14, 1983, stating to her that the gun "wasn't clean anymore." He explained that he had "used it on a job" and "wasted a guy or blew a guy away." Ms. Rogers testified that she refused to take the gun back, and that Goad paid her a sum of from $80 to $100 for it.

She said that she did not report the incident because she had seen nothing about a homicide in the news media and did not know whether or not Goad was serious in his statement. She did identify the gun found in Goad's possession as the one which she had loaned to him.

William Dickey Roy and Steven Charles Taylor testified that they were employed at the Bell Road Liquor Store in Nashville. On February 11, 1983, they had been robbed at the store by appellant, who was using the derringer above referred to, which they identified at trial. Ron Wayne Cobb testified that on March 16, 1983, a

little over a month after the homicide involved here, appellant had robbed him as he worked at a market in Donelson and had shot him twice with the same derringer. Ballistics tests verified that the bullets removed from Mr. Cobb's body were fired from the same weapon which was used in the homicide of John Crawford.

This is a case in which there were no eyewitnesses, no identifiable fingerprints and no formal confession by the accused. The case against appellant was almost entirely circumstantial, except for his somewhat indefinite incriminating statement to Edna Faye Rogers. The issues presented on appeal must be evaluated in light of those facts.

As previously stated there is no issue presented as to the sufficiency of the convicting evidence. The principal issue raised, however, concerns the admission at the guilt phase of two other crimes committed by appellant, these being the robberies of the liquor store on February 11, about two or two and one-half days prior to the crime involved here, and the market on March 16. Three of the issues presented on appeal concern this evidence.

A large portion of the discussion of these issues in appellant's brief is taken up with complaints about the late notification by the District Attorney General to defense counsel of the names of witnesses to be used. There is no real showing of surprise or lack of ability to defend with regard to these matters, and we find no merit in them.

Appellant correctly cites *Bunch v. State,* 605 S.W.2d 227 (Tenn.1980), for the proposition that evidence of other criminal offenses by an accused is ordinarily not admissible at a trial because it is not relevant to any issue. In that case, however, the Court said:

"It is well established, of course, that in a criminal trial evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible *because it is irrelevant.* [citations omitted]. Moreover, because of the obvious prejudice of such evidence to the defendant its admission often constitutes prejudicial error, requiring the reversal of a conviction. [citation omitted]. However, if evidence that the defendant has committed a crime separate and distinct from the one on trial, *is relevant* to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted." 605 S.W.2d at 229. (Emphasis in original).

In *State v. McKay,* 680 S.W.2d 447 (Tenn.1984) it was held that evidence of a separate robbery occurring ten days prior to the offenses on trial was properly admitted to establish that the accused were in possession of the murder weapon and to establish their identity as the perpetrators of the offenses on trial. There the Court said:

"The evidence of the other crime was relevant to the issue in this case of whether defendants were in possession of a .45 caliber automatic pistol [which had been stolen in the robbery] prior to the time of the Sundry Store massacre and also to the issue of the identity of the killers." 680 S.W.2d at 452.

Similarly, in the case of *State v. Taylor,* 669 S.W.2d 694, 697–698 (Tenn.Crim.App. 1983), it was held that evidence of a subsequent crime was admissible to establish possession of the murder weapon by the accused and thereby to prove his identity as perpetrator of the crime on trial. There the Court said:

"There were no eyewitnesses to this murder. The bullets recovered from the victim's body constituted the only physical evidence which could point to the guilty party. The State was required, as in all criminal cases, to establish the iden-

tity of the perpetrator of this crime beyond a reasonable doubt. It was essential to the State's case that it connect the defendant to the weapon from which the fatal shots were fired. Evidence that the defendant had possession of this pistol and used it within two months after it was used to shoot the victim was material and relevant. [citations omitted], In admitting this evidence, the trial judge prudently limited the testimony of the witness as to the identification of the defendant and the identification of the gun. Accordingly, the witness testified to the bare essential facts that he was shot by the defendant, wrestled the gun away from the defendant and kicked it away. The witness further testified that he shot the defendant. He made positive identification of the gun and the defendant. As heretofore noted, subsequent testing of the gun by a firearms examiner established that it was the murder weapon. The probative value of this evidence is not outweighed by its prejudicial effect, and we find no error in its admission."

We believe that these authorities are controlling here. The weapon involved was of an unusual type, and appellant was shown to be in possession of it both before and after the date of the homicide under investigation. The evidence was, of course, prejudicial to the accused, as is all of the probative evidence offered in behalf of the prosecution in a criminal trial. In this case, and under the circumstances mentioned previously, it was highly probative, and the trial judge correctly determined that it was practically essential to the State's case.

■ Counsel for appellant insists that the State had ample other evidence to prove identity, but this, at best, is a matter of conjecture. It is not a matter for the defense counsel to determine. In their opening statement at the guilt phase, counsel for defendant made no other issue whatever and offered no other defense except that of identity. Since this was their sole defense, they were, of course, never in position to stipulate it, and the burden was cast upon the State to establish identity beyond a reasonable doubt. Proof of the other robberies committed by appellant with the murder weapon was properly admitted. We find no merit in appellant's contentions to the contrary.

■ Except as hereinafter stated, the remaining issues presented on appeal are insubstantial and may be briefly disposed of. We have carefully studied the examination of the prospective jurors, and we find no error whatever in the action of the trial judge in limiting some of the questioning by counsel for appellant or in the excusing of one juror who stated that she could not consider the death penalty under any circumstances. The failure to excuse another juror for cause because he favored the death penalty likewise was not error in view of his statement that he could consider both life imprisonment and the death penalty as appropriate punishments for murder in the first degree. This juror was actually removed later by a peremptory challenge.

■ Appellant assigned as error the admission of the testimony of the victim's wife. Her testimony established not only his death but the time when she last spoke to him by telephone, giving some indication as to the time bracket when the homicide must have occurred. Her testimony was relevant and it was not offered solely for emotional purposes as contended by the appellant.

■ The same is true with respect to photographs of the victim admitted at the trial. These show the location of the gunshot wound and corroborated other testimony that it was inflicted at point-blank range. The photographs are not gruesome and their prejudicial effect does not outweigh their probative value.

■ In a similar vein counsel assign error upon the admission of portions of the

testimony of a detective who described the gunshot wound and expressed some opinion concerning its characteristics. The witness was qualified to give the testimony which was elicited from him, and it was corroborated by other expert proof from a pathologist.

■ Error is assigned upon the exclusion by the trial judge of an allegedly exculpatory oral statement given by the accused to a detective. Such statements are not admissible. *See State v. King,* 694 S.W.2d 941, 944–945 (Tenn.1985).

■ Complaint is made of the exclusion of an alleged prior criminal offense of the witness Edna Faye Rogers. This involved some bad checks issued some five or six years prior to trial and involving nominal amounts. The entire charges were disposed of by the payment of a fine of $17.50. No actual records of this incident were introduced, and the trial judge concluded that the proof concerning the prior offense was neither sufficiently clear nor relevant to the credibility of the witness to justify its admission. We find no abuse of discretion in its exclusion.

■ Counsel for appellant have listed numerous comments from the closing argument of the District Attorney General and assigned them as error. Objection was made to only one of these, and the trial court gave corrective instructions. The remainder of the comments, almost in their entirety, were made in response to propositions advanced by defense counsel, including responses to the defense's contention that appellant's conduct was attributable to his military service and its urging that life imprisonment rather than death was an appropriate punishment. The State simply pointed out that appellant had already received two other life sentences before committing the wanton, brutal and wholly unjustified murder in the present case. We find no merit to appellant's contentions concerning the jury argument.

■ Attack is made upon the constitutionality of the death penalty, but this Court has so frequently ruled upon that issue that further discussion here is not necessary. It is also argued that the trial court unduly protracted the jury deliberations, but the record does not sustain any such contention. No improper instructions were given by the trial judge when the jurors first reported that they appeared to be deadlocked. At that time, however, they had only been out about four hours, part of which was consumed in a luncheon recess. The trial judge instructed the jury to resume its deliberations, and in about one additional hour its verdict was reported.

A final, informal, issue is made that the conviction of armed robbery in this case merged with the felony murder so as to permit only a single sentence. This Court held to the contrary in *State v. Blackburn,* 694 S.W.2d 934 (Tenn.1985).

■ After carefully studying all of the foregoing assignments and closely reviewing the record, we are of the opinion that no reversible error was committed on this trial record and that the punishment imposed was fully justified by the evidence. In addition to the fact that the homicide was committed during the perpetration of an armed robbery, the record shows six prior convictions of the accused for major crimes of violence between 1970 and 1983. The jury appropriately found these to constitute an aggravating circumstance under T.C.A. § 39–2–203(i)(2). It found no mitigating circumstances to outweigh the two specified aggravating circumstances reflected in its verdict, and the death penalty was therefore fully warranted on the record adduced.

There remains for consideration, however, one issue presented on appeal which we simply cannot resolve from the trial record and which requires us to remand the matter to the trial court for further proceedings.

Late on the afternoon when the sentencing hearing had begun, March 21, 1984, the following occurred at a jury-out colloquy:

"MR. PELLEGRIN: Your Honor, just for preservation of the record, I would like to show that the record reflected that it's roughly a quarter till six, and that we have made a request to adjourn so that we could have Dr. Oakley Ray here in the morning. He has been out of town for two weeks."

The District Attorney General called for an offer of proof as to the testimony of the witness, because the State intended to object to his testimony as being irrelevant. The following is all that the record shows:

"MR. PELLEGRIN: Your Honor, Dr. Ray is with the Veterans Administration mental health section, and he spent some time with Mr. Goad and is an expert in the field of post traumatic stress syndrome, and would testify about the effect of Mr. Goad's Vietnam experience."

This was the sole offer of proof made either at trial or in the post-trial proceedings. The trial judge responded:

"THE COURT: Thank you, Mr. Pellegrin. I wouldn't allow that testimony at the sentence hearing. So let the record so show."

We are of the opinion that the trial court erred in so ruling on such a sparse offer of proof, but we are unable to reverse his decision or conscientiously to order a further sentencing hearing without further development of the matter.

Counsel for appellant filed a motion for a new trial and assigned the exclusion of Dr. Ray's testimony as error. They did not, however, attach to the motion for a new trial an affidavit from the doctor or any other evidence of his actual availability or of the contents of his proposed testimony. The statement of counsel at the hearing of the motion for a new trial is quite ambiguous. Counsel stated as follows:

"Dr. Ray is an expert on what's known as the post Vietnam stress syndrome.

*We didn't use that as a defense because there was no proof of that,* but we felt that Dr. Ray would be helpful to the jury, and actually could have shown to the jury some mitigating circumstances by testifying what he knew about Mr. Goad and what he knew about this particular affliction. I think that more and more, as time goes by, it's been determined by all sorts of psychiatrists and counselors, and even recognized by the Veterans Administration, that a number of veterans from Vietnam have suffered from this, and that they come home, and that they have had deviate behavior.

"What concerns me mostly, I suppose, is that it was 5:40 in the afternoon, rather late, and we asked the court for an adjournment to have Dr. Oakley (*sic*) here the next morning, since we didn't think that we would get through in time or would have time that afternoon to put him on. We really didn't expect to go that late. The Court refused to grant that adjournment. Then the Court simply stated you would not allow his testimony under any circumstances, whether he was present or not present." [Emphasis added]

The trial record shows that the court did in fact adjourn on the afternoon of March 21, 1984, before conclusion of the sentencing hearing. The State was allowed to offer rebuttal proof that day, but final arguments and jury instructions were not conducted until the next day, March 22. Counsel for appellant did not present Dr. Ray on the morning of March 22 or make any offer of proof as to what he would have testified about, other than the brief summary quoted above. Of course, they could have concluded that this would be futile because of the judge's statement that he would not admit the testimony.

■ In order for an appellate court to review a record of excluded evidence, it is fundamental that such evidence be placed in the record in some manner. When it is a document or exhibit, this is done simply by

having the exhibit marked for identification only and not otherwise introduced. When, however, it consists of oral testimony, it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible.

In the case of *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804 (Tenn.1975), this Court observed:

"After rather extensive arguments by counsel for both parties, the court sustained the objection; whereupon, an offer of proof was tendered, consisting of a narration by counsel for Dr. Clemmer as to the expected substance of said proof. Parenthetically we observe that, while this method of making an offer of proof meets the technical requirements of Rule 43.03 [T.R.C.P], the better practice is to present the proof so that if, on appeal, the ruling of the trial judge is reversed on the legal question presented, the possibility of a second appeal, following the remand, will be avoided."

■ This procedure obtains in criminal cases as well as in civil actions. Counsel in this case were experienced. They filed at least fifteen written pre-trial motions in this case, obtained an order of the trial court to go to Florida to investigate the circumstances of the accused's arrest, obtained authority to employ a ballistics expert, and had the accused evaluated for mental illness. They clearly knew how to make an offer of proof if Dr. Ray had anything probative to offer.

The offer made at trial is wholly inadequate. For all that appears in the record, Dr. Ray could have concluded that appellant's Vietnam experience played little or no role in his life of crime. The same is true with respect to the colloquy on the motion for a new trial. Counsel stated that they did not use the post-traumatic syndrome as a defense "because there was no proof of that." We can only infer from this statement that Dr. Ray would not testify that this individual was suffering from such a syndrome. The record does not delineate the length or scope of appellant's military service in Vietnam. His mother testified that he had been designated as a lineman, and she inferred from this that he had been in combat. Other testimony indicated, however, that he had been with a communications company. Such service medals as he received appear to have been those given to most Vietnam veterans.

It seems to us that if Dr. Ray's testimony would indeed have been mitigating, counsel should have made a more detailed offer of proof at trial or, at least, supported the motion for a new trial by an affidavit or other report. This record simply will not support a reversal on this issue.

On the other hand, as we have indicated, the trial judge should not have prematurely ruled or prevented a fuller development of an offer of proof. Almost any evidence that would tend to mitigate the punishment for the first degree murder of which the defendant stood convicted would have been admissible at the sentencing hearing. This Court has previously ruled that competent and credible evidence of post-traumatic stress syndrome may mitigate punishment or justify probation. *See State v. Spawr*, 653 S.W.2d 404 (Tenn.1983). In that case, because the record was incomplete the cause was remanded to the trial court for further consideration.

■ We feel constrained to take the same action here. We remand the case to the trial court with directions that defense counsel be given a reasonable time in which to establish that they had contacted Dr. Ray and had arranged for his appearance on the morning of March 22 as represented. Unless this is shown, the sentence in this case will not be disturbed. If it is shown, then counsel will be permitted to present Dr. Ray's testimony, either orally or by deposition, or to file an affidavit from him. In the latter event the State shall be given an opportunity to interview the witness and to take a further affidavit if desired.

The trial judge shall determine whether counsel were actually prepared to offer the testimony of Dr. Ray as represented. If so, he shall evaluate that testimony and determine whether or not it would be admissible for purposes of mitigating the punishment in this case. If it is nothing more than a generalized dissertation upon the hardships of the Vietnam war, without specific reference to the military experience of and its effect upon this accused, it may not be relevant. If it does credibly tend to establish that this accused suffered from post-traumatic stress syndrome in February 1983, then the death sentence should be vacated and a new sentencing hearing held. The trial judge cannot and should not exclude any evidence probative of any mitigating circumstance. On the other hand this Court cannot speculate that error occurred based upon an offer of proof as indefinite as that made here.

On this appeal counsel for appellant have stated in their brief the following:

"The defense sought to introduce the testimony of Dr. Oakley Ray who was prepared to testify that he was familiar with the Defendant and that he had spent considerable [time] with the Defendant and has evaluated him to some extent. *It was Dr. Ray's contention that the Defendant suffered from post-traumatic stress syndrome due to his Vietnam experience.*" (Emphasis added).

This is much more specific than the statements made at trial and on the post-trial motion. We assume that counsel are prepared to substantiate the statement in their appellate brief, and that they actually were prepared to offer relevant testimony from this witness on March 22, 1984. On that basis we remand the issue for further development as aforesaid. If counsel have not accurately represented the situation, the trial judge may act accordingly. Costs incident to this appeal are taxed to appellant.

BROCK, C.J., and FONES, COOPER and DROWOTA, JJ., concur.