ADOLPHO A. BIRCH, JR., J.,
concurring and dissenting.
I concur in the conclusion of the majority that Cole’s conviction should be affirmed. As to the sentence of death, however, I have two concerns. First, I am uncomfortable with the majority’s analysis regarding the application of aggravating circumstance (i)(2) (previous conviction of one or more felonies whose statutory elements involve the use of violence to the person). The majority acknowledges that the statutory elements of the previous convictions relied on in this case: robbery, kidnapping, reckless endangerment and attempted rape, may or may not involve the use of violence. Therefore, the underlying facts of those prior offenses must be analyzed to determine whether violence was involved. Citing to State v. Sims, 45 S.W.3d 1 (Tenn.2001), and the more recent case applying Sims, State v. Powers, 101 S.W.3d 383, 400-401 (Tenn.2003), the majority holds that a judge may singly make the determination whether violence was involved in the prior cases and instruct the jury accordingly. In so holding, the majority characterizes this decision as a “legal,” not “factual” one.
Both Sims and Powers, of course, preceded the landmark case of Blakely v. Washington, 542 U.S. —, —, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004), in which the Supreme Court clarified unequivocally that the jury, not the judge, must find any facts that will be used to increase the penalty for a crime beyond the prescribed statutory maximum. (The Court had previously held in Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 *910 L.Ed.2d 556 (2002), that Apprendi applied to require that a jury find aggravating factors that will be used to justify a death sentence). By characterizing the decision whether a prior offense involved violence as a “legal” as opposed to “factual” one, the majority effectively avoids the consequences of the Apprendi and Blakely holdings. I believe that this conclusion is less certain than the majority implies, although the Supreme Court has yet to address this narrow issue. I would hold that in light of the Apprendi, Ring and Blakely holdings, any additional factual findings necessary for application of the prior violent felony aggravator “beyond the bare fact that a prior conviction exists,” including whether the elements of the prior conviction are “violent,” must be made by a jury. Accord, Arizona v. Ring, 204 Ariz. 534, 65 P.3d 915, 939 (2003) (on remand from the U.S. Supreme Court).
As for the second concern, I continue to adhere to my views, previously expressed in a long line of dissents, that the comparative proportionality review protocol currently embraced by the majority is inadequate to shield defendants from the arbitrary and disproportionate imposition of the death penalty. See Tenn.Code Ann. § 39-13-206(c)(1)(D) (1995 Supp.). I have repeatedly expressed my displeasure with the current protocol since the time of its adoption in State v. Bland, 958 S.W.2d 651 (Tenn.1997). See State v. Robinson, 146 S.W.3d 469, 529 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Leach, 148 S.W.3d, 42, 68 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Davis, 141 S.W.3d 600, 632 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Berry, 141 S.W.3d 549, 589 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Holton, 126 S.W.3d 845, 872 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Davidson, 121 S.W.3d 600, 629-36 (Tenn.2003) (Birch, J., dissenting); State v. Carter, 114 S.W.3d 895, 910-11 (Tenn.2003) (Birch, J., dissenting); State v. Reid, 91 S.W.3d 247, 288-89 (Tenn.2002) (Birch, J., concurring and dissenting); State v. Austin, 87 S.W.3d 447, 467-68 (Tenn.2002) (Birch, J., dissenting); State v. Stevens, 78 S.W.3d 817, 852 (Tenn.2002) (Birch, J., concurring and dissenting); State v. McKinney, 74 S.W.3d 291, 320-22 (Tenn.2002) (Birch, J., concurring and dissenting); State v. Bane, 57 S.W.3d 411, 431-32 (Tenn.2001) (Birch, J., concurring and dissenting); State v. Stout, 46 S.W.3d 689, 720 (Tenn.2001) (Birch, J., concurring and dissenting); Terry v. State, 46 S.W.3d 147, 167 (Tenn.2001) (Birch, J., dissenting); State v. Sims, 45 S.W.3d 1, 23-24 (Tenn.2001) (Birch, J., concurring and dissenting); State v. Keen, 31 S.W.3d 196, 233-34 (Tenn.2000) (Birch, J., dissenting). As previously discussed, I believe that the three basic problems with the current proportionality analysis are that: (1) the proportionality test is overbroad,[1] (2) the pool of cases used for comparison is inadequate,[2] and (3) review is too subjective.[3] *911 I have previously discussed, in depth, my perception that these flaws undermine the reliability of the current proportionality protocol. See State v. Godsey, 60 S.W.3d at 793-800 (Birch, J., concurring and dissenting). I continue to adhere to my view that the current comparative proportionality protocol is woefully inadequate to protect defendants from the arbitrary or disproportionate imposition of the death penalty.[4] Accordingly, I respectfully dissent from that portion of the majority opinion affirming the imposition of the death penalty in this case.
APPENDIX
(Excerpts of the Decision of the Court of Criminal Appeals)
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 9, 2003 Session
STATE OF TENNESSEE v. DETRICK COLE
Direct Appeal from the Criminal Court for Shelby County, No. 01-01221 Joseph B. Dailey, Judge
No. W2002-01254-CCA-R3-DD-Filed November 24, 2003
Panel: Presiding Judge Gary R. Wade, Judge Jerry L. Smith.
Joe G. Riley, J., delivered the opinion of the court, in which GARY R. Wade, P. J., and JeRRY L. Smith, J., joined.
OPINION
[DELETED: GUILT PHASE EVIDENCE]
[DELETED: PENALTY PHASE EVIDENCE]
[DELETED: I. SUFFICIENCY OF THE EVIDENCE]
II. PHOTOGRAPH OF VICTIM DURING LIFETIME
The defendant contests the admission of a portrait-style photograph of the victim taken during his lifetime, contending it was irrelevant and its probative value was substantially outweighed by the danger of unfair prejudice and confusion of issues. While the state concedes that the photograph may have added “little or nothing” to its case-in-chief, it claims the introduction of the photograph did not result in any prejudice to the defendant.
The admission of photographs is generally discretionary with the trial court and, absent an abuse of that discretion, will not result in the grant of a new trial. See State v. Banks, 564 S.W.2d 947, 949 (Tenn.1978). A family photograph may be relevant to establish the victim’s identity as the person killed. See State v. *912 Nesbit, 978 S.W.2d 872 app. at 902 (Tenn.1998). We conclude the trial court did not err in admitting the photograph into evidence.
Regardless, even if the trial court erred, such error was harmless. In State v. Dicks, 615 S.W.2d 126, 128 (Tenn.1981), the defendant claimed “before and after” photographs of the victim were without relevance and were prejudicial. The court stated that it found no prejudicial error in the admission, “though it would have been better had the ‘before’ picture of [the victim] been excluded since it added little or nothing to the sum total of knowledge of the jury.” Id. Likewise, in the instant case, although the photograph added little to the other information provided to the jury, it did not prejudice the defendant. This issue is without merit.
III. POST-MORTEM PHOTOGRAPHS OF VICTIM
During the testimony of forensic pathologist Dr. Mallak, the state introduced two autopsy photographs depicting close-ups of the victim’s scalp. Specifically, the photographs revealed a gray ring of soot around one wound indicating it was the result of a gunshot fired at close range. In response to the defendant’s objection to the photographs, the state asserted they were relevant to show the distance between the gun and the victim when the gun was fired. The trial court permitted introduction of the photographs after it determined them to be relevant to the issue of premeditation, and after it cropped the photographs to show less of the victim’s scalp. In this appeal, the defendant asserts that the close-up photographs of the victim’s scalp should not have been admitted, as the photographs were especially gruesome and inflammatory.
Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases. Banks, 564 S.W.2d at 949. Accordingly, “the admissibility of photographs lies within the discretion of the trial court whose ruling ... will not be overturned on appeal except upon a clear showing of an abuse of discretion.” Id.; see State v. Hall, 8 S.W.3d 593, 602 (Tenn.1999). However, a photograph must be found relevant to an issue that the jury must decide before it may be admitted into evidence. See State v. Vann, 976 S.W.2d 93, 102 (Tenn.1998); see also Tenn. R. Evid. 401.
Photographs of a corpse are generally admissible in murder prosecutions if they are relevant to the issues at trial, notwithstanding their gruesome character. State v. Carter, 114 S.W.3d 895, 902 (Tenn.2003). Conversely, evidence which is not relevant to prove some part of the prosecution’s case should not be admitted solely to inflame the jury and prejudice the defendant. Id. at 951. “[P]hoto-graphs of the victim may be admitted as evidence of the brutality of the attack and the extent of force used against the victim, from which the jury could infer malice.” State v. Goss, 995 S.W.2d 617, 627 (Tenn.Crim.App.1998); see also State v. Smith, 868 S.W.2d 561, 576 (Tenn.1993) (holding photograph was relevant to show “premeditation”). The probative value of the photograph must outweigh any unfair prejudicial effect that it may have upon the trier of fact. Vann, 976 S.W.2d at 102; see Tenn. R. Evid. 403.
The trial court ultimately determined that the photographs were relevant and were not “particularly graphic.” In this case, the state was required to prove that the killing was intentional and premeditated. See Tenn.Code Ann. § 39-13- *913 202(a)(1). The photographs were relevant to supplement the testimony of the medical examiner that this wound was inflicted from contact range, from which a jury could infer premeditation, and not from a few feet away as claimed by the defendant during his statement to the police. Additionally, the photographs dispel the defendant’s claim of self-defense. Further, the photographs are not particularly gruesome. We conclude that the probative value of the photographs is not outweighed by their prejudicial effect, and the trial court did not abuse its discretion in allowing their admission. Further, it does not affirmatively appear that the “admission of the photographs has affected the results of the trial.” See Banks, 564 S.W.2d at 953. The defendant is not entitled to relief on this issue.
[DELETED: IV. FINGERPRINTING OF DEFENDANT IN PRESENCE OF JURY DURING PENALTY PHASE]
V. EXCLUSION OF HEARSAY EVIDENCE DURING PENALTY PHASE
During the penalty phase, defense counsel asked the defendant’s father whether the defendant had expressed any remorse about the victim’s death. The trial court sustained the state’s objection based upon hearsay. On appeal, the defendant argues the trial court erred in excluding the evidence because hearsay evidence is admissible during the penalty phase of a capital trial and the defendant’s remorse was a relevant consideration for the jury. He acknowledges he made no offer of proof at sentencing or at the hearing on the motion for new trial; however, he requests that this court remand the matter to the trial court to permit an offer of proof on this issue. See State v. Goad, 707 S.W.2d 846, 852-54 (Tenn.1986).
The state correctly responds that the defendant has waived this issue by failing to make an offer of proof and for failing to raise this issue in his motion for new trial. See Tenn. R.App. P. 3(e); State v. Sims, 45 S.W.3d 1, 15 (Tenn.2001). Moreover, our supreme court in Sims declined to remand for a further hearing after finding that, unlike the defendant in Goad, defendant Sims did not attempt to make an offer of proof. 45 S.W.3d at 15. Likewise, in the instant case, the defendant did not attempt to make an offer of proof. Thus, we could consider the issue waived. However, we opt to address the issue based upon the record before us.
The rules of evidence do not limit the admissibility of evidence in a capital sentencing proceeding. Carter, 114 S.W.3d at 903; State v. Stout, 46 S.W.3d 689, 702 (Tenn.2001). However, any error on part of the trial court in excluding the testimony of the defendant’s father was clearly harmless. The defendant, during his own testimony, expressed remorse for the victim’s death. Additionally, he made the following statement to the jury:
Ladies and gentlemen, I know that what I did was wrong, and I know me saying that I’m sorry to them and I’m sorry to my family won’t bring [the victim] back. He wasn’t a bad person. I was the bad person. But I ask you just please have mercy on me. I didn’t mean for that to happen. I wasn’t at home. Me and my family, we wasn’t together. I was out in the streets. I didn’t know what to do. I didn’t know what was going on in my life. I just needed help from somebody — just please, please don’t kill me — please.
We conclude the potential hearsay testimony about the defendant’s expressions of *914 remorse to his father would not have affected the jury’s verdict. The defendant is not entitled to relief on this claim.
[DELETED: VI. APPRENDI/RING ISSUE]
VII. INSTRUCTION ON VICTIM IMPACT EVIDENCE
At the conclusion of the penalty phase, the trial court provided an instruction to the jury relative to its consideration of victim impact evidence, which included the following:
The prosecution has introduced what is known as victim impact evidence. This evidence has been introduced to show the financial, emotional, psychological, or physical effects of the victim’s death on the members of the victim’s immediate family. You may consider this evidence in determining an appropriate punishment. However, your consideration must be limited to a rational inquiry into the culpability of the defendant, not an emotional response to the evidence.
Victim impact evidence is not the same as an aggravating circumstance. Proof of an adverse impact on the victim’s family is not proof of an aggravating circumstance. Introduction of this victim impact evidence in no way relieves the State of its burden to prove beyond a reasonable doubt at least one aggravating circumstance which has been alleged. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstances has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstance(s) found outweigh the finding of one or more mitigating circumstances beyond a reasonable doubt.
The defendant complains this instruction amounts to an undue intrusion into the exclusive province of the jury. He argues there is a reasonable probability that it coerced a death sentence because the instruction informed the jury not to consider victim impact evidence unless it had already found that death was the appropriate punishment.
This exact instruction was recommended by our supreme court in Nesbit, 978 S.W.2d at 892, and discussed by the high court in State v. Reid, 91 S.W.3d 247, 283 (Tenn.2002). The high court specifically noted in Reid that any contradiction arising between the instruction and the statute inured to the benefit of the defendant. 91 S.W.3d at 283. This issue lacks merit.
[DELETED: VIII. SUFFICIENCY OF THE (i)(2) AGGRAVATING CIRCUMSTANCE]
IX. VERDICT FORM AS TO AGGRAVATING CIRCUMSTANCE
The jury was instructed on the statutory aggravating circumstance as follows:
That the defendant was previously convicted of one or more felonies, other than the present charge, the statutory elements of which involved the use of violence to the person. The state is relying upon the crimes of Robbery, Kidnapping, Reckless Endangerment, and Attempted Rape, which are felonies, the statutory elements of which involve the use of violence to the person.
See TenmCode Ann. § 39-13-204(i)(2). The verdict form returned by the jury during the penalty phase of the defendant’s trial reads as follows:
*915 PUNISHMENT OF DEATH
(1) We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances:
(Here list the statutory aggravating circumstance or circumstances so found, which must be limited to those enumerated for your consideration by the court in these instructions.)
Robbery
Kidnapping
Reckless endangerment
Attempted rape
[[Image here]]
The defendant contends that this constitutes an incomplete and erroneous verdict because (1) none of these four crimes are listed as an aggravating circumstance, and (2) the jury did not find that the crimes were those whose statutory elements involve the use of violence to the person. The defendant has waived his right to challenge this issue on appeal as he failed to object to the jury’s verdict and failed to raise the issue in his motion for new trial. State v. McKinney, 74 S.W.3d 291, 303 n. 5 (Tenn.2002). Regardless, we elect to address the merits of this issue based upon the record before us.
The jury’s verdict need not be a verbatim statement of the aggravating circumstance relied upon by the state. State v. Jerry Ray Davidson, 121 S.W.3d 600, 619-620 (Tenn., 2003). A verdict is valid if it clearly indicates that the jury found the elements of the aggravating circumstance or circumstances relied upon by the prosecution; the aggravating circumstances found are those clearly authorized by statute; and the verdict is sufficient to permit effective appellate review of the sentence. McKinney, 74 S.W.3d at 303.
The jury’s verdict in the case under review is similar to the verdict form returned by the jury in McKinney, where the state also relied solely upon the (i)(2) aggravating circumstance. See id. In McKinney, the verdict form read, in part, “We, the jury, unanimously find the following listed statutory aggravating circumstance or circumstances: aggravated robbery.” Id. Our supreme court held the verdict was sufficient. Id. In the instant case, like McKinney, only the (i)(2) aggravating circumstance was charged to the jury; the trial court’s instruction tracked the statutory language; and the verdict specifically cited the prior offenses relied upon by the state and instructed by the court. Moreover, in the case sub judice, the trial court questioned the jury to clarify its intent, stating:
... [Y]ou have written in there:
“Robbery, Kidnapping, Reckless Endangerment, and Attempted Rape,” which, for the record, are the four offenses listed on the charge as the aggravating circumstance, although you have not written the entire language as reflected on the charge, an aggravating circumstance. I assume that in writing these four offenses on here you have determined that the aggravating circumstance, as written on the charge, has been proven beyond a reasonable doubt. Is that correct?
The jury foreman responded in the affirmative. We conclude that the jury form in this case was clear and unequivocal. The defendant is not entitled to relief on this claim.
X. CONSTITUTIONALITY OF THE TENNESSEE DEATH PENALTY SCHEME
The defendant argues Tennessee’s death penalty statutes are unconsti *916 tutional and the death penalty is imposed capriciously and arbitrarily. The Tennessee courts have repeatedly upheld the constitutionality of our state’s death penalty statutes. See, e.g., Reid, 91 S.W.3d at 312-14; State v. Hines, 919 S.W.2d 573, 582 (Tenn.1995), cert. denied, 519 U.S. 847, 117 S.Ct. 133, 136 L.Ed.2d 82 (1996). Further, the courts of our state have rejected the defendant’s arguments that Tennessee’s procedures for implementing the death penalty allow it to be imposed capriciously and arbitrarily. See, e.g., Hines, 919 S.W.2d at 582; State v. Brimmer, 876 S.W.2d 75, 87 (Tenn.), cert. denied, 513 U.S. 1020, 115 S.Ct. 585, 130 L.Ed.2d 499 (1994); State v. Cazes, 875 S.W.2d 253, 268, 270-71 (Tenn.1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); State v. Harris, 839 S.W.2d 54, 77 (Tenn.1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Thompson, 768 S.W.2d 239, 250-52 (Tenn.1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990).
The defendant contends the statutory aggravating circumstances set forth in Tennessee Code Annotated section 39-2-203(i)(2), (5), (6), and (7) have been so broadly interpreted that they fail to provide a “meaningful basis” for narrowing the population of those convicted of first degree murder to those eligible for the sentence of death. However, factors (i)(5), (6) and (7) do not pertain to this case. Further, our courts have previously concluded that the (i)(2) aggravating circumstance provides a meaningful basis for narrowing the class of death eligible defendants. See, e.g., State v. Austin, 87 S.W.3d 447 app. at 487 (Tenn.2002), cert. denied, 538 U.S. 1001, 123 S.Ct. 1899, 155 L.Ed.2d 829 (2003); Vann, 976 S.W.2d at 117; State v. Keen, 926 S.W.2d 727, 742 (Tenn.1994). This issue is without merit.
[DELETED: XI. COMPARATIVE PROPORTIONALITY REVIEW]
[DELETED: CONCLUSION]

. I have urged adopting a protocol in which each case would be compared to factually similar cases in which either a life sentence or capital punishment was imposed to determine whether the case is more consistent with "life” cases or “death” cases. See State v. McKinney, 74 S.W.3d at 321 (Birch, J., concurring and dissenting). The current protocol allows a finding proportionality if the case is similar to existing death penalty cases. In other words, a case is disproportionate only if the case under review “is plainly lacking in circumstances consistent with those in similar cases in which the death penalty has been imposed.” Bland, 958 S.W.2d at 665 (emphasis added).

. In my view, excluding from comparison that group of cases in which the State did not seek the death penalty, or in which no capital sentencing hearing was held, frustrates any meaningful comparison for proportionality *911 purposes. See Bland, 958 S.W.2d at 679 (Birch, J., dissenting). This case, in particular, is a prime example of the arbitrariness of this protocol.

. As I stated in my concurring/dissenting opinion in State v. Godsey, "[t]he scope of the analysis employed by the majority appears to be rather amorphous and undefined-expanding, contracting, and shifting as the analysis moves from case to case.” 60 S.W.3d 759, 797 (Tenn.2001) (Birch, J., concurring and dissenting).

. I also note that in a recent study on the costs and the consequences of the death penalty conducted by the State Comptroller, one of the conclusions was that prosecutors across the state are inconsistent in their pursuit of the death penalty, a fact that also contributes to arbitrariness in the imposition of the death penalty. See John G. Morgan, Comptroller of the Treasury, Tennessee’s Death Penalty: Costs and Consequences 13 (July 2004), available at www.comptroller.state.tn.us/orea/reports.