IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2026

**STATE OF TENNESSEE v. ARVEL JOSHUA TERRY**

**Appeal from the Circuit Court for Maury County**
**No. 31098     J. Russell Parkes, Judge**

————————————————————

**No. M2025-00106-CCA-R3-CD**

————————————————————

A Maury County jury convicted the Defendant, Arvel Joshua Terry, of domestic assault. The trial court sentenced him to a term of eleven months and twenty-nine days, which was suspended after service of 120 days in custody. On appeal, the Defendant raises two issues: (1) whether the evidence is legally sufficient to support his conviction for domestic assault; and (2) whether the trial court improperly denied defense counsel the opportunity to refresh a witness's recollection. Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JOHN W. CAMPBELL, SR., JJ., joined.

Travis Jones, District Public Defender, and Robert R. Wagonschutz, Assistant District Public Defender (on appeal and at trial); and Luke A. Johnson, Assistant District Public Defender (at trial), for the appellant, Arvel Joshua Terry.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evans, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Kyle Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

The Defendant and the victim were married and lived together with their respective children. After several years of marriage, in August 2023, the victim informed the Defendant that she wanted a divorce but did not legally file for one and continued living with the Defendant.

On the night of March 28, 2024, the victim initially went to sleep in a bedroom with the Defendant. After the Defendant attempted to touch her and she refused, the Defendant forced her to sleep on the couch. The next morning, the victim turned on music as she got ready for work. The Defendant began to yell at the victim about her music, then told her to get out of their shared bedroom and threatened to touch her if she did not leave the bedroom. The victim turned around, and the Defendant jumped up from where he was on the bed and began forcefully rubbing her breasts and shoulders. The victim attempted to shove the Defendant away from her, but the Defendant grabbed her arms and dragged her out of the bedroom into the hallway, where he threw her into a piece of furniture.

The victim eventually got away from the Defendant and left the house. The victim avoided the Defendant by staying at work and at a friend's house. While at work, the victim's foot began to bother her, and she eventually went to the hospital for an examination. The following day, the victim took pictures of her injuries and filed a police report. She also met with an officer from the Columbia Police Department, who took additional pictures of her injuries.

On June 13, 2024, a Maury County grand jury indicted the Defendant for one count of domestic assault. During the jury trial, the State established the above facts through the testimony of the victim, a police officer with the Columbia Police Department, and the victim's son, A.C., who witnessed the assault.[1] The Defendant did not testify or offer additional proof.

---

[1] Because the victim's son was a minor at the time of these events, we refer to him by his initials.

The jury found the Defendant guilty as charged. Following a hearing on December 5, 2024, the trial court sentenced the Defendant to a term of eleven months and twenty-nine days, which was suspended after service of 120 days in custody.

The Defendant filed a timely motion for a new trial, which was denied by a written order entered on January 9, 2025. The Defendant filed a timely notice of appeal fifteen days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant presents two issues for review. First, he questions the legal sufficiency of the evidence supporting his conviction for domestic assault. He also contends that the trial court improperly denied him the opportunity to refresh the recollection of the victim's son during his testimony. We address each issue in turn.

### A.    LEGAL SUFFICIENCY OF THE CONVICTING EVIDENCE

The Defendant first asserts that the evidence is legally insufficient to support his conviction for domestic assault. In particular, he argues that the State offered no eyewitness evidence of the assault apart from the victim, that her injuries could not be tied to the time of the assault, and that the victim had a motive to fabricate the allegations against the Defendant. The State responds that the evidence, viewed in a light most favorable to the State, establishes each of the essential elements necessary for conviction. We agree with the State.

#### 1.    Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, when making that determination, the State "is entitled to the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. Rimmel*, 710 S.W.3d 640, 645 (Tenn. 2025) (citation and internal quotation marks omitted).

To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2. Review of the Defendant's Domestic Assault Conviction

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *Rimmel*, 710 S.W.3d at 646. The indictment in this case charged the Defendant with the domestic assault of the victim. A domestic assault is "an assault . . . against a domestic abuse victim." Tenn. Code Ann. § 39-13-111(b) (2025). As charged in this case, an assault is committed by "[a] person . . . [who] intentionally, knowingly or recklessly causes bodily injury to another." *Id.* § 39-13-101(a)(1) (2025). As is relevant to this case, a domestic abuse victim is any adult who is a current or former spouse of the Defendant. *Id.* § 39-13-111(a)(1).

Viewing the evidence in the light most favorable to the State, the proof at trial established each element of the offense. It is undisputed that the victim was the Defendant's wife at the time of the incident and thus qualified as a domestic abuse victim. Tenn. Code Ann. § 39-13-111(a)(1). The victim testified that the Defendant grabbed her by the forearms, shifted his grip to her upper arms, and forcefully dragged her across the length of their bedroom. He then performed what the victim described as a "grab-and-shove-and-throw" motion, sending her into a hallway bench with enough force that she "bounced off and hit the floor." The assault caused bodily injury, including bruising to the victim's upper arm, shins, and toe, which she photographed. Tenn. Code Ann. § 39-11-106(a)(3) (2025). In addition, an officer with the Columbia Police Department observed bruising on the victim's upper arm and swelling in her toe two days after the incident, and he took additional photographs of her injuries.

The proof also established the requisite mental state. As charged in this case, the offense of assault is a result-of-conduct offense. *See State v. Cross*, No. E2013-02133-CCA-R3-CD, 2014 WL 4748337, at *4 (Tenn. Crim. App. Sept. 25, 2014) (recognizing that "assault pursuant to Tennessee Code Annotated section 39-13-101(a)(1) is a result-of-conduct offense"), *no perm. app. filed*. A person acts recklessly with respect to the result of conduct when he or she is "aware of but consciously disregards a substantial and unjustifiable risk" that a prohibited result will occur. *See* Tenn. Code Ann. § 39-11-302(c)

- 4 -

(2025). The risk must be "of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the [defendant's] standpoint." *Id.*

Here, the victim testified that the Defendant grabbed her by the arm, dragged her across the bedroom, and threw her with sufficient force that she struck a hallway bench and fell to the floor. That account was corroborated by the Defendant's own statement— reported by both the victim and her son—that he had "thrown [the victim] out of the bedroom like a bouncer." A rational juror could conclude from this evidence that the Defendant was, at a minimum, aware of but consciously disregarded a substantial and unjustifiable risk that his conduct would cause bodily injury to the victim.

Having concluded that the proof establishes each element of the offense, we address the specific arguments the Defendant advances in support of a contrary result. The Defendant contends that the State offered no eyewitness evidence of the assault apart from the victim herself, that the victim's injuries could not be tied to the time of the incident, and that the victim had a motive to fabricate the allegations against him.

Each of those arguments invites this court to reassess the credibility of the State's witnesses or to reweigh the evidence—a function that belongs exclusively to the jury. As we have noted, "[q]uestions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *Curry*, 705 S.W.3d at 183. Accordingly, this court will not disturb a jury's credibility findings "unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

The record here contains no such improbability. The victim's testimony was corroborated by the observations of the Columbia police officer, the testimony of A.C., and the photographic evidence of the victim's injuries. The victim's alleged motive to fabricate, the absence of a direct eyewitness to the assault, and the timing of the injury photographs were all presented to and considered by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "[I]t is the province of the jury to assess the credibility of the witnesses, weigh the evidence, and resolve disputed issues of fact." *State v. Daniels*, 656 S.W.3d 378, 392 (Tenn. Crim. App. 2022) (citation omitted). We will not disturb its findings in this regard. *See State v. Watkins*, 648 S.W.3d 235, 256 (Tenn. Crim. App. 2021).

To the extent the Defendant contends that the proof is not overwhelming, our standard of review does not require it to be. *See Lyons*, 669 S.W.3d at 791. The proper

inquiry is only whether the jury's finding was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). The victim's testimony, credited by the jury and supported by the physical evidence and the testimony of other witnesses, satisfies that threshold.

We therefore conclude that the evidence was legally sufficient for a rational trier of fact to find the Defendant guilty of domestic assault beyond a reasonable doubt.

## B.   REFRESHING A WITNESS'S RECOLLECTION

The Defendant next contends that the trial court abused its discretion when it declined to permit defense counsel to show the victim's son a video recording of his police interview. Specifically, defense counsel sought to use the recording to refresh A.C.'s recollection as to whether he had reported to the investigating officer that the Defendant admitted to throwing the victim out of the bedroom "like a bouncer." The State responds that the Defendant waived this claim by failing to raise it in his motion for a new trial and by failing to include the video in the appellate record by way of an offer of proof. We conclude that the absence of the video in the appellate record precludes our review of this issue.

### 1.   Background

The events giving rise to this issue occurred during the cross-examination of the victim's son. On direct examination, A.C. testified that, on the morning of March 29, 2024, he went into the hallway of the family residence after hearing a noise and confronted the Defendant, who told him that he had thrown the victim out of the bedroom "like a bouncer." On cross-examination, defense counsel asked A.C. whether he had reported this admission to the police during his interview with Corporal Brad Ricketts. A.C. responded, "I believe I did." Corporal Ricketts, however, had testified on direct examination that he spoke with A.C. only to ascertain whether he was present in the home during the incident, and that A.C. told him he was present but not in the room and had not observed anything.

Defense counsel then asked A.C. whether viewing a video of his interaction with the officer would refresh his memory as to whether he made that statement. A.C. responded, "It probably would. Yes, sir." Defense counsel proposed showing the video to the witness, inquiring whether the court wished to do so outside the presence of the jury. The trial court declined to send the jury out, stating, "I'm not going to do a jury out. If you got it cued up, you can play it. You can say, 'Does that refresh your recollection?'"

Counsel approached the bench and informed the court that the video was approximately an hour and a half long but offered to isolate the relevant portions showing A.C.'s interaction with the officer. The trial court then said it would allow only the playing of "the prior inconsistent statement," not the entire interview. When defense counsel clarified that his goal was not to introduce a prior inconsistent statement—explaining that the issue was the absence of a statement rather than the presence of a conflicting one—the court responded, "And if he says he didn't on that, then it's a prior inconsistent statement, but I'm not letting you play the whole interview."

Defense counsel then moved to admit "the portions of this video as evidence . . . of his interactions with the officer" for "impeachment purposes." The trial court declined, stating that impeachment required a prior inconsistent statement, and counsel ultimately said, "I'll move along."

Defense counsel then resumed cross-examining A.C. on other grounds, revealing that A.C. had not testified in any prior court proceeding that the Defendant made any statement about throwing the victim "like a bouncer." On redirect, the State showed that A.C. had not been specifically asked in earlier hearings what the Defendant had said to him.

### 2. Tennessee Rule of Evidence 612

Tennessee Rule of Evidence 612 permits a witness to use "a writing while testifying to refresh memory for the purpose of testifying," subject to the adverse party's right to inspect the writing, cross-examine the witness thereon, and introduce in evidence relevant portions. Tenn. R. Evid. 612. The rule reflects traditional practice and is grounded in the proposition that the refreshing material may expose inaccuracies in the witness's memory that would not otherwise be disclosed. *See* Neil P. Cohen, et al., *Tennessee Law of Evidence* § 6.12[3][a] (7th ed. 2024) (hereinafter *Tennessee Law of Evidence*).

Before permitting a witness to use a writing for this purpose, the examining party must first establish that the witness's memory requires refreshing and that the material will be useful in that regard. *State v. Price*, 46 S.W.3d 785, 814 (Tenn. Crim. App. 2000) (citing Tenn. R. Evid. 612, advisory comm'n cmt.). Although Rule 612 by its express terms applies only to "writings," this court has recognized that a trial court does not abuse its discretion by permitting a witness to refresh memory by listening to an audio recording of a prior statement to police investigators outside the presence of the jury. *See, e.g., State v.*

*Looney*, No. M2014-01168-CCA-R3-CD, 2016 WL 1399344, at *26 (Tenn. Crim. App. Apr. 7, 2016), *perm. app. denied* (Tenn. Aug. 18, 2016).

### 3.      Adequacy of the Appellate Record

As a threshold matter, the State argues that the Defendant has waived plenary review of his evidentiary claim because he did not specifically raise a refreshed-recollection theory in his motion for a new trial. *See* Tenn. R. App. P. 3(e); *State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024). We acknowledge that the record presents a genuinely close question on that point.[2] However, we need not resolve that preservation issue because the Defendant's claim fails on a separate and independently dispositive ground: the video recording of A.C.'s police interview was never placed in the record, and its absence precludes meaningful appellate review.

As our supreme court has explained, what is in the record sets the boundaries of what appellate courts may review, and only evidence contained in the record can be considered. *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005). Put more directly, "if a fact is not in the appellate record, it did not happen." *State v. Hamilton*, No. W2023-01127-CCA-R3-CD, 2024 WL 4130757, at *3 (Tenn. Crim. App. Sept. 10, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025). Accordingly, this court may only review what is in the record and not what might have been or should have been included. *State v. Coman*, No. W2020-01684-CCA-R3-CD, 2022 WL 2288523, at *7 (Tenn. Crim. App. June 24, 2022) (citation omitted), *no perm. app. filed*.

Tennessee Rule of Evidence 103(a)(2) provides an important corollary to these principles. This rule provides that error may not be predicated on a ruling excluding evidence unless "the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a)(2). This requirement serves a foundational purpose: it ensures a record adequate to permit a reviewing court to determine whether the exclusion of the contested evidence affected a substantial right of the party. *See Tennessee Law of*

---

[2]      In his motion for a new trial, the Defendant described the trial court's ruling only as improper impeachment, and the State argues that this framing, standing alone, does not preserve a separate refreshed-recollection claim for appellate review. We agree that the two claims are distinct. *See State v. Lalone*, No. E2016-00439-CCA-R3-CD, 2017 WL 2297653, at *18 n.16 (Tenn. Crim. App. May 25, 2017), *no perm. app. filed*. Nevertheless, because the Defendant's failure to make an offer of proof independently precludes appellate review of this claim, we do not decide whether the claim is also waived by the Defendant's failure to raise the correct framing in his motion for a new trial.

*Evidence* § 1.03[5][a] ("Tennessee appellate courts routinely refuse to consider allegations of erroneous exclusion of evidence if there was no offer of proof.").

Consistent with this principle, it is fundamental that, for an appellate court to review an evidentiary claim, "such evidence be placed in the record in some manner." *State v. Goad*, 707 S.W.2d 846, 852 (Tenn. 1986). When the challenged evidence is a document or recording, this requirement is satisfied "simply by having the exhibit marked for identification only and not otherwise introduced." *Id.* at 852-53. Where no offer of proof is made, the issue is generally deemed waived, and appellate review is precluded. *State v. Hall*, 958 S.W.2d 679, 691 n.10 (Tenn. 1997).

The absence of an offer of proof is especially consequential when, as here, the excluded evidence is oral or audiovisual rather than documentary. *See Goad*, 707 S.W.2d at 852; *Tennessee Law of Evidence* § 1.03[5][a]. Unlike a document whose contents can be described with reasonable precision, a ninety-minute video recording of a police interview cannot be reconstructed from counsel's unsworn representations at trial. Without the recording itself, a reviewing court cannot evaluate what it shows, what it omits, and how a witness might respond to viewing it.

In this case, defense counsel proposed to show A.C. the video recording of his police interview, offered to isolate the relevant portions, and then, when the trial court declined to allow the showing, moved on without preserving any portion of the recording for review. The Defendant did not submit the video as an exhibit marked for identification. More significantly, the Defendant did not offer the video or call A.C. as a witness at the hearing on the motion for a new trial. This opportunity would have permitted counsel to show A.C. the recording in a controlled setting, observe its effect on his recollection, and develop a proper record of its relevance and impact. The Defendant availed himself of neither avenue.

The Defendant contends, however, that the bench colloquy at trial was sufficient to make the substance of the excluded evidence apparent from the context within the meaning of Rule 103(a)(2). We respectfully disagree. Rule 103(a)(2) is not satisfied merely because the parties discussed the existence of the excluded evidence on the record. Rather, the rule requires that both the substance of the evidence and the specific basis for its admissibility be apparent from the context. Tenn. R. Evid. 103(a)(2). Here, the colloquy with the court fell short of that standard.

For example, defense counsel described the video only as approximately an hour and a half in length and offered to isolate the relevant portions showing A.C.'s interaction

with the officer. Counsel identified the general purpose—to show that A.C. did not report the Defendant's "bouncer" statement to the police—but never identified the specific portion of the recording he intended to use, never described what the recording showed in any detail, and could not represent to the court what A.C.'s reaction to viewing it would be.

The colloquy thus left open the most consequential questions bearing on admissibility: whether the video actually omitted any reference to the Defendant's alleged admission; whether A.C. had been asked about that statement during the interview; whether any absence of disclosure was clear and unambiguous; and whether the recording, viewed in its entirety or in the isolated portion counsel proposed to play, would have assisted or undermined the Defendant's position. A generalized description of the purpose of the evidence is not the same as a disclosure of its substance, and the latter is what Rule 103(a)(2) demands. *See Goad*, 707 S.W.2d at 852-53.

These omissions are significant. The Defendant's entire theory of relief depends on what the recording shows, yet the recording is not in the record. In effect, the Defendant asks this court to accept, without evidentiary support, that the recording was consistent with his characterization of its contents. We decline to do so. Without an adequate offer of proof, we cannot determine what A.C.'s interaction with Corporal Ricketts actually reflected, whether any relevant portion of the recording would have refreshed A.C.'s recollection, or whether exclusion of the recording affected the Defendant's substantial rights. *See Hall*, 958 S.W.2d at 691 n.10; *Goad*, 707 S.W.2d at 852-53; *Tennessee Law of Evidence* § 1.03[5][a]. The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to sustain the Defendant's conviction for domestic assault. We also conclude that, in the absence of an adequate offer of proof, the record is insufficient to permit meaningful appellate review of the Defendant's evidentiary claim. We respectfully affirm the judgment of the trial court.


s/ **Tom Greenholtz**
TOM GREENHOLTZ, JUDGE


- 10 -