# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 15, 2013 Session

## STATE OF TENNESSEE v. WILLIAM LANCE WALKER

**Appeal from the Circuit Court for Marshall County**
**No. 2009-CR-119    Robert G. Crigler, Judge**

---

**No. M2011-02588-CCA-R3-CD - Filed September 27, 2013**

---

The Defendant, William Lance Walker, was convicted by a Marshall County Circuit Court jury of two counts of possession with the intent to sell one-half gram or more of cocaine, two counts of possession with the intent to deliver one-half gram or more of cocaine, and possession of drug paraphernalia. *See* T.C.A. §§ 39-17-417, 39-17-425 (2010). The trial court merged each possession with the intent to deliver conviction with the corresponding possession with the intent to sell conviction. The Defendant was sentenced as a Range II, multiple offender to concurrent terms of nineteen years for each possession with the intent to sell conviction and eleven months, twenty-nine days for the possession of drug paraphernalia conviction. On appeal, he contends that (1) the trial court erred by denying his motion to suppress, (2) the trial court imposed an excessive sentence, and (3) the trial judge erred by failing to recuse himself. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and PAUL G. SUMMERS, SR.J., joined.

LaShawn A. Williams, Houston, Texas, for the appellant, William Lance Walker.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a search of the Defendant's home in which cocaine was found. At the trial, Bedford County Sheriff's Deputy Tim Miller testified that on December 5, 2008, he was the Assistant Director of the local drug task force. He said that on December 5, the

task force obtained a search warrant for the Defendant's home and that they entered the home through the back door. He said he saw and chased the Defendant, who ran down the hall, entered the master bedroom, and attempted to hide between the wall and the bed. He said that after the Defendant was handcuffed, $250 was found in his pants pocket.

Deputy Miller testified that he searched the master bedroom for evidence, that he found two bags of what looked like cocaine inside a teddy bear, and that he gave the bags to the task force director. He said he found a set of digital scales and a box of sandwich bags inches apart in the kitchen. He said that based on his experience and training, the type of bags was used to package cocaine. He said that a white substance was visible on the scales and that he thought the substance was cocaine. He said this evidence was consistent with selling drugs. He said an adult female was present at the home during the search.

Deputy Miller testified that he and the director spoke with the Defendant, that he advised the Defendant of his rights, and that the Defendant waived his rights and made a statement. He said the Defendant wanted to talk to them in the bathroom and asked that they close the door. He said the Defendant told him that he obtained sixty-five grams of cocaine from a friend in Nashville. The Defendant admitted returning to Lewisburg with the cocaine and selling it and said he "converted" some of the cocaine to crack cocaine and sold it. The Defendant told Deputy Miller that he owned the cocaine found during the search. The Defendant admitted driving to Nashville and returning with cocaine once a week for thirty-one days.

On cross-examination, Deputy Miller testified that the Defendant did not reach for the teddy bear. He stated that crack cocaine was also found inside the bedroom and that the drugs were hidden. He agreed a police dog was used during the search, although he did not know when the dog came through the home. He said that he found the drugs inside the bear before the dog entered the bedroom.

Deputy Miller testified that he searched for openings in the teddy bear because he had found drugs in stuffed animals previously. He said that he understood that the search occurred at the Defendant's home and that he had personal knowledge the Defendant lived there. He said he did not recall looking for mail addressed to the Defendant during the search.

Deputy Miller testified that the Defendant's oral statement was preserved in a narrative written by Director Lane. He said he reviewed the statement sometime after December 5, 2008. He said the narrative was accurate. He agreed he did not record the Defendant's statement. He said the Defendant refused to identify the person who provided the drugs. He could not recall if the Defendant was asked to whom he sold the drugs.

Deputy Miller testified that he and the Defendant were in the laundry room when he told the Defendant that he wanted to talk to him, but the Defendant stated that he did not want to talk there. He thought the Defendant did not want anyone to hear their conversation. They moved into the bathroom, and the Defendant asked that they close the door. He read the Defendant his *Miranda* rights and said he did not recall whether the Defendant was handcuffed. He said that after the Defendant admitted possessing the drugs, he and the director asked the Defendant to be a confidential informant. He said that the Defendant was willing to cooperate and that the Defendant was released.

Shelbyville Police Officer Shane George testified that he took photographs of the evidence and that it was taken to the director. He said that the Defendant was the only person inside the home when the police arrived and that two females arrived during the search.

Officer George testified that he helped search the Defendant's bedroom, that the teddy bear filled with drugs was found on the dresser, and that he found a bag of crack cocaine and $25 inside the dresser. He said he searched the Defendant's car outside the home and found the Defendant's wallet and $11.

On cross-examination, Officer George testified that he took a photograph of the female who arrived during the search but that he did not recall asking who she was. He said he thought the female was about twelve to sixteen years old. He agreed he verified that the car outside the home was registered to the Defendant, although he did not recall the address connected to the car. He said the investigation showed the Defendant lived there.

Drug and Violent Crime Task Force Director Tim Lane testified that he was present when the search warrant was executed at the Defendant's home. He said that the officers who searched the home gave him all the evidence. He identified the evidence found inside the home, including the packages of cocaine, the scales, and the money, which consisted of two $100 bills, three $20 bills, four $10 bills, three $5 bills, and one $1 bill.

Director Lane testified that he and Deputy Miller talked to the Defendant. He said that Deputy Miller read the Defendant his *Miranda* rights and that the Defendant understood his rights and wanted to talk to them. He said the Defendant was not arrested that day because he was willing to become a confidential informant but wanted to think about it. He said that he told the Defendant that he had a few days to decide but that if he did not become a confidential informant, they would arrest him for the drugs.

Director Lane testified that the Defendant stated that he traveled to Nashville thirty-one days previously, purchased 2.25 ounces of cocaine from a friend, returned to Lewisburg with the cocaine, and was selling it. He said the Defendant admitted driving to Nashville

weekly and converting some of the cocaine into crack cocaine. He said the Defendant admitted possessing the drugs found during the search.

On cross-examination, Director Lane testified that a Lincoln car was in the backyard of the Defendant's home. He said that the police set up surveillance about one hour before the search and that he saw the Defendant drive the Lincoln, park the car at the home, and get out of the car. He said he saw a twelve-year-old girl enter the home through the kitchen door during the search. The girl's mother arrived fifteen to twenty minutes later.

Director Lane testified that Deputy Miller asked him to witness his conversation with the Defendant. He thought the Defendant was afraid someone would hear their conversation. He did not recall whether this conversation occurred before or after the girl's mother arrived. He said that over the course of his career, he had released several people from police custody after finding drugs in their possession. He said he had released thirty people within the previous twelve months. He admitted it was his decision to release the Defendant. He said that drug "distributors," rather than dealers, worked with larger quantities of drugs and possessed large denominations of currency.

Tennessee Bureau of Investigation (TBI) Special Agent Brett Trotter testified as an expert in forensic science that he analyzed two substances found in the Defendant's home. He said he was provided one large bag that contained thirty-six individual bags containing rock-like substances. He analyzed six of the bags, which weighed a total of 0.62 grams. Although Mr. Trotter did not analyze the remaining individual bags, he stated that the gross weight of the bags was 3.8 grams. He said his analysis showed that the rock-like substances inside the six bags were cocaine base. He said he also analyzed a powder substance, weighing 6.73 grams, and concluded that the powder was cocaine. On cross-examination, he stated that he was not asked to perform a fingerprint analysis of the bags containing the cocaine. This appeal followed.

# I

The Defendant contends that the trial court erred by denying his motion to suppress evidence seized under the search warrant. He argues that (A) the affidavit contained a false statement and misrepresentations essential to establishing probable cause, (B) the warrant was erroneously based on hearsay statements of a confidential informant and the trial court erroneously denied the motion to suppress based on the "four corners" of the warrant, and (C) the warrant lacked a sufficient nexus between the drug activity, the seller, and the residence.

At the suppression hearing, the Defendant argued that (A) his *Miranda* rights were violated, (B) the informant was unreliable and incredible, and (C) the search exceeded the scope of the warrant. The trial court stated that the *Miranda* issue was previously under advisement and that the credibility of the informant could be determined by looking at the four corners of the warrant. The court only heard testimony regarding the scope of the search.

Bedford County Sherriff's Deputy Tim Miller testified that he was present when the search warrant was executed at the Defendant's home. He said he found the drugs in the master bedroom inside a small teddy bear on top of the dresser. He found two bags inside the back of the bear. The substance inside the bags was later determined to be cocaine.

Deputy Miller testified that Cornersville Police Chief Todd Bone took the drug detection dog inside the Defendant's home. He said the dog was with the officers when they entered the home. He said that although he did not recall telling the prosecutor that the dog alerted them to the teddy bear, he probably told him. The prosecutor stated that he knew about the dog's alerting them to the bear, although he did not recall if Deputy Miller or Director Lane told him. He denied that the dog entered the bedroom when he entered but said later that he did not recall where he was in the home when he saw the dog.

Deputy Miller testified that he examined the teddy bear because he had previously found drugs in stuffed animals numerous times. He said he searched the dresser drawers, the mattress, and under the bed. He said that another officer found crack cocaine on top of the dresser but that he only found the cocaine inside the bear.

Director Tim Lane testified that he was not in the bedroom when the teddy bear was searched. He said that he was in the kitchen when the dog entered the home through the kitchen door and that the dog went into every room. He said the bear was left in the home because he did not think it was important. He said that the Defendant admitted he owned the drugs after he was advised of his *Miranda* rights. He said that after the dog and the officers searched the home, he walked through the home but did not look for the bear.

The trial court stated it would issue a written order. We note, though, that the trial court's written order is not included in the appellate record. The court found on the record that although the teddy bear was not mentioned in the search warrant, the bear was searched. The court stated that the question became whether the bear was something the police would have "necessarily looked into" and gave the State and the Defendant the opportunity to provide it with case law.

Regarding the credibility of the informant, the trial court found that the search warrant adequately showed the credibility of the informant. The court did not make findings regarding the *Miranda* issue raised by the Defendant and said it would "mull on what to do about that." The case was rescheduled for May 19, 2010. Transcripts from May 19 are not included in the appellate record.

An appellate court may consider the evidence presented at the suppression hearing as well as at the trial in determining whether the trial court properly denied a pretrial motion to suppress. *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998). A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which we review de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

## A. False Statement and Misrepresentations in the Affidavit

The Defendant contends that the affidavit falsely stated that "[y]our affiant knows that the CI used in this controlled purchase has made at least three other controlled purchases of drugs from illegal drug traffickers while under the direction and control of agents" of the task force. He points to Director Lane's testimony at the sentencing hearing that he had personal knowledge that the informant made three previous controlled purchases from the Defendant. Director Lane stated that the informant may have made a controlled buy from someone other than the Defendant and that Deputy Miller could offer clarification. Director Lane requested permission to review the warrant, but before he could testify further, the State objected, and the trial court prevented further questioning regarding the warrant. The State contends that the Defendant has waived this issue by failing to raise it in the trial court.

The Defendant failed to raise the issue in his motion to suppress or in his motion for a new trial. Although he argues that the misrepresentation was not discovered until the sentencing hearing, the Defendant failed to raise the issue as a ground for a new trial. Tennessee Rule of Appellate Procedure 36(a) states that relief is not required when "a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tennessee Rule of Appellate Procedure 3(e) states that

> no issue presented for review shall be predicated upon error in the admission
> . . . of evidence . . . or other action committed or occurring during the trial . .

. , or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issue will be treated as waived.

We conclude that the issue is waived and that our review is limited to plain error. *See* T.R.A.P. 36(b); *State v. Adkisson*, 899, S.W.2d 626, 642 (Tenn. Crim. App. 1994).

> Our supreme court has adopted the factors developed by this court to be considered
>
> when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). The record must establish all five factors before plain error will be recognized and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Smith*, 24 S.W.3d at 283. In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the trial," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *Adkisson*, 899 S.W.2d at 642.

We conclude that plain error does not exist because the record does not clearly show what occurred in the trial court. The record is void of evidence or factual findings from the trial court because the Defendant failed to raise the issue in the trial court and failed to include the trial court's written order. Also, Director Lane's testimony at the sentencing hearing is of no consequence because he was not permitted to discuss the warrant after reviewing it, and no offer of proof was made. The record fails to show that Director Lane made a false or misleading statement in the affidavit.

### B. Reliability of the Informant

The Defendant contends that the trial court should have permitted him to present evidence regarding the reliability of the informant's statements contained in the search warrant. The State contends that the issue is waived because the Defendant failed to make an offer of proof at the suppression hearing and that the trial court properly found that it could make a probable cause determination by examining the warrant.

Although the Defendant's original motion to suppress is not included in the record, the amended motion to suppress contends, in relevant part, that the police informant discussed in the search warrant affidavit was not reliable or credible. *See Aguilar v. Texas*, 378 U.S. 108 (1964); *see also Spinelli v. United States*, 393 U.S. 410 (1969). The trial court found that the issue could be resolved by examining the four corners of the warrant and that testimony was not required. The Defendant did not request the opportunity to make an offer of proof, and the court's order denying relief is not included in the appellate record.

Tennessee Rule of Evidence 103(a)(2) states, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Our supreme court has concluded that failure to make an offer of proof results in wavier of the issue before the appellate courts. *See State v. Sims*, 45 S.W.3d 1, 15 (Tenn. 2001); *see also State v. Goad*, 707 S.W.2d 846, 852-53 (Tenn. 1986) (concluding that "[i]n order for an appellate court to review a record of excluded evidence, it is fundamental that such evidence be placed in the record"). Because the Defendant failed to request the opportunity to make an offer of proof after the trial court found that no evidence was necessary at the suppression hearing, the substance of what the Defendant would have presented is not apparent from the record. We conclude that the issue is waived and that our review is limited to plain error. *See* T.R.A.P. 36(b); *Adkisson*, 899, S.W.2d at 642.

We conclude that plain error does not exist because the Defendant cannot show what occurred in the trial court due to his failure to include in the appellate record the written order denying the motion to suppress. Likewise, the Defendant cannot show that a clear and unequivocal rule of law was breached. Although the Defendant claims that he should have been allowed to present extrinsic evidence regarding the reliability of the informant, a "'reviewing court may consider *only* the information brought to the magistrate's attention.'" *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989) (quoting *Aguilar*, 378 U.S. at 109 n.1) (emphasis in original). Moreover, an evidentiary hearing is only required when there are

> allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits . . . of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any governmental informant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978).  The record fails to show that Director Lane deliberately lied or had a reckless disregard for the truth in his affidavit.

### C.  Probable Cause

The Defendant contends that the warrant failed to show any observation of the Defendant at his home other than the informant's statement that he purchased cocaine from the Defendant.  He claims that although the warrant mentions three additional controlled purchases, these purchases were not made at the Defendant's home.  He argues that the transactions away from the home "diminish[] any nexus between [the] criminal activity and the residence" searched and that probable cause requires reasonable suspicion that a crime occur at the place to be searched.  The State responds that the trial court properly found that the warrant was supported by probable cause.  We agree with the State.

A search warrant must be based on probable cause, and "[a] showing of probable cause requires . . . reasonable grounds for suspicion, supported by circumstances indicative of an illegal act."  *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999) (citing *State v. Johnson*, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993)).  Although an affidavit may establish probable cause based on hearsay information from a confidential informant, the information must include more than conclusory allegations.  *Id.*  When the police use a criminal informant, the two-prong *Aguilar-Spinelli* test applies. *Jacumin*, 778 S.W.2d at 436.  The warrant must establish the basis for the informant's knowledge and either a basis for showing the informant's credibility or the reliability of the informant's knowledge.  *State v. Cauley*, 863 S.W.2d 411, 417 (Tenn. 1993).

The affidavit must also establish a "nexus among the criminal activity, the place to be searched, and the items to be seized."  *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009).  This court considers "'whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence.'" *Id.* (quoting *State v. Reid*, 91 S.W.3d 247, 275 (Tenn. 2002)).  This court "may consider only the affidavit and may not consider any other evidence known by the affiant or provided to or possessed by the issuing magistrate." *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2009).

The affidavit in support of the warrant stated that the police informant made a controlled purchase of what appeared to be cocaine from the Defendant.  The affidavit described the Defendant's home and gave directions to the property.  The informant reported that the Defendant was involved in cocaine distribution and that the informant was willing to participate in a controlled purchase.  Surveillance personnel followed the informant to the

Defendant's home, the location of the controlled purchase. The informant and his car were searched before meeting the Defendant, and he was provided $450 to purchase cocaine. The informant left his car, entered the Defendant's home, left the home a few minutes later, and returned to his car. The informant paid for the drugs with the money provided by the police and delivered to the police two bags of what was believed to be cocaine. The affidavit stated that the informant made at least three additional controlled purchases from "illegal drugs traffickers while under the direction and control of agents" of the task force. The affidavit also stated that on three other occasions, the informant purchased drugs from the Defendant at different locations throughout Marshall County at the direction of the drug task force.

The record shows that Director Lane, the affiant, knew the informant. Director Lane stated that the informant had made previous controlled drug purchases from other dealers. Director Lane was familiar with the location of the Defendant's home, and he detailed in the affidavit the informant's purchasing what was believed to be cocaine from the Defendant while inside the Defendant's home. The warrant specified that the police were looking for the money provided to the informant for the controlled purchase of the cocaine. The affidavit contains direct information connecting the drugs to the Defendant and his home. We conclude that a sufficient nexus existed between the cocaine, the Defendant, and the Defendant's home. The Defendant is not entitled to relief.

## II

The Defendant contends that the trial court imposed an excessive sentence. He argues that the sentence is inconsistent with the principles and purposes of the Act and that the court failed to give proper weight to mitigating evidence presented at the hearing. The State responds that the trial court did not err during sentencing. We agree with the State.

At the sentencing hearing, the presentence report was received as an exhibit. The report showed previous convictions for felonious possession of cocaine, three misdemeanor possessions of cocaine, aggravated robbery, two assaults, driving under the influence, violating the driver's license requirements, and two traffic offenses. The report showed that the Defendant's parole for aggravated robbery and cocaine possession was revoked. The Defendant had a high school education and reported good physical health, although he suffered a detached retina. The Defendant reported using cocaine at age eighteen, marijuana at age thirteen, and ecstasy and Xanax at age twenty-one. The Defendant said he first drank alcohol at age fifteen.

Crystal Gray testified that she prepared the presentence report, that the Defendant was on parole at the time of the present offenses, and that the present offenses were committed thirty-one days after he received parole. She said the Defendant's parole was revoked. On

cross-examination, Ms. Gray stated that the Defendant wrote in the presentence questionnaire that he felt "bitter resentment" about having an absentee father and suffering mental abuse by his stepfather. The Defendant also wrote that his childhood was terrible without a father figure, that he had no guidance as a child, and that he wanted to provide his children with the things he did not receive as a child. Ms. Gray agreed she did not speak with the Defendant about his statement.

Eugene Holman testified for the Defendant that he was the Defendant's former parole officer. He said that the Defendant lived with Sherry Giacomo after he was paroled and that the Defendant provided proof of employment. On cross-examination, he stated that the Defendant did not provide proof of employment from a cleaning service owned by Christopher Peacock.

The Defendant testified that before he received parole in 2008, he received a letter from Christopher Peacock stating that he would give the Defendant a job upon release from prison. He said he created a job plan based on that letter, which was approved by the parole board. He said that after he was released from prison, he went to the home searched by the police and reported to Mr. Holman within the required seventy-two-hour time period. He said Mr. Peacock told him that it would be about one month before he could hire the Defendant. The Defendant relayed this information to Mr. Holman and sought temporary service work. Mr. Peacock told the Defendant that he sold marijuana to make ends meet and offered to obtain marijuana for the Defendant. The Defendant said he accepted Mr. Peacock's offer. He said he bought one-quarter of a pound of marijuana for $350 from Mr. Peacock.

Regarding his statement to the police in the home's bathroom the day of the search, the Defendant testified that he did not use the words "converted," "prospective buyers," and "obtained" and that those were the officers' words. He agreed he told the police that he made trips to Nashville weekly. He said that the thirty-one days mentioned in his statement was the number of days he had been on parole. He said that he asked Mr. Peacock for more marijuana and that Mr. Peacock asked him if he knew where he could find cocaine. He told Mr. Peacock he did not know but would attempt to find out. He admitted selling the marijuana and obtaining and selling cocaine to Mr. Peacock. He said he sold Mr. Peacock cocaine three additional times. He said he met Mr. Peacock through Ms. Giacomo.

The Defendant told the trial court that he took full responsibility for his actions. He thought his parole disadvantaged him because he did not have the support of others. He said it "was impossible . . . to make a transition from the Tennessee Department of Correction[] . . . to society without presenting a risk to the public." He said his motive for selling drugs was to pay rent.

The Defendant testified that his father lived in another county when he was a child and that his stepfather teased him and told him he would never make anything of himself. He said the mental abuse impacted his abilities at school, causing him to be discharged from Marshall County High School for stealing. He said he graduated from Giles County High School. He said he was discharged from middle school and attended alternative school. He agreed he acted out because he believed that because he did not have a father, he did not have to listen to anyone. He said that at a certain age, he stopped blaming others for his actions.

The Defendant testified that he accepted responsibility for his previous convictions. Although he know ledged his long history of drug- and assault-related offenses, he asked for leniency. He said he had been incarcerated from 2002 to 2011, except for the time he was on parole. He said he was a "model inmate" while in confinement and was housed in the minimum security area. He said that while on probation, he had negative drug screens, attended Alcoholics Anonymous meetings, paid his fees, and stayed out of trouble, although he conceded he violated his parole. He said he attempted to rehabilitate himself and wanted to participate in his children's lives. He assured the trial court that he would not commit new crimes because he had missed most of his children's lives and had spent his twenties in prison. He said he wanted to live life for the first time.

The Defendant testified that he completed a six-month substance abuse program and anger management classes and that he attended an intensive substance abuse program previously. He said he intended to seek further substance abuse treatment because he needed to stay sober.

On cross-examination, the Defendant testified that the police officers' summary of his statement was accurate. According to the statement, upon the Defendant's release from prison, the Defendant obtained sixty-five grams of cocaine from a friend in Nashville. He admitted to four cocaine sales and agreed that he told the police he made crack cocaine from the cocaine and sold it to more than one buyer. He said later, though, that he sold only to Mr. Peacock and that he converted the powder cocaine into crack cocaine because he thought Mr. Peacock might want it, too. He said Mr. Peacock never asked for crack cocaine.

The Defendant testified that his previous parole was revoked because marijuana was found during a traffic stop of a car he drove. He agreed that his aggravated robbery conviction involved the use of a gun and that he fled from the police in one of the drug-related cases. He said that he had a gun in his pants pocket but that he threw the gun when the police began to catch him.

On redirect examination, the Defendant testified that he did not know Mr. Peacock before his release from prison. On recross-examination, he stated that six grams was the most cocaine he sold to Mr. Peacock in one transaction. The Defendant exercised his Fifth Amendment privilege against self-incrimination when asked where he obtained the money to purchase the cocaine.

Director Tim Lane testified that Mr. Peacock became a confidential informant for the drug task force and was assigned to purchase drugs from the Defendant on November 13, 2008. He agreed that he swore in his search warrant affidavit that the confidential informant was credible and reliable. He did not know Mr. Peacock promised to employ the Defendant. He said Mr. Peacock was not a paid informant but was "working off" criminal charges.

Deputy Timothy Miller, recalled by the defense, testified that Mr. Peacock became a confidential informant in early November 2008. He denied documenting that Mr. Peacock was working off criminal charges. He agreed he was present during the controlled purchases between Mr. Peacock and the Defendant. He did not recall if the tip about drugs inside the Defendant's home came from Mr. Peacock.

Chris Peacock testified that he was a confidential informant for the drug task force and that he participated in several controlled drug purchases from the Defendant. He recalled speaking to Mr. Holman but did not recall the Defendant's asking for proof of employment.

In determining the Defendant's sentence, the trial court considered the evidence at the trial and sentencing hearing, the presentence report, the principles of sentencing, the nature and characteristics of criminal conduct, the Defendant's potential for rehabilitation, and the Defendant's testimony at the sentencing hearing. The court found that mitigating factors (1), (7), and (13) applied. *See* T.C.A. §§ 40-35-113(1) (2010) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury"), -113(7) ("The defendant was motivated by a desire to provide necessities for the defendant's family or the defendant's self"), and -113(13) ("Any other factor consistent with the purposes of this chapter"). The court found that the Defendant's uncontradicted testimony showed that he committed the present offenses because he needed to pay rent. The court found that the Defendant confessed, although he did not admit to the substance of the confession until the sentencing hearing.

The trial court found that enhancement factors (1), (8), and (13) applied. *See* T.C.A. §§ 40-35-114(1) (2010) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"), -114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence

-13-

involving release in to the community"), and -114(13) (At the time the felony was committed, the defendant was released on parole). The court found that the Defendant had many previous drug-related convictions and that he admitted extensive drug use involving ecstasy, Xanax, cocaine, and marijuana. The court found that the Defendant violated the conditions of his parole on two eight-year sentences. The court noted that the parole revocation was based upon the Defendant's cocaine possession charge from Giles County, leaving the county without permission, failing to report to his parole officer, and possessing illegal drugs. The court found that the Defendant was released on parole at the time the present offenses were committed.

The trial court sentenced the Defendant as a Range II, multiple offender to concurrent terms of nineteen years for each possession with the intent to sell conviction and eleven months and twenty-nine days for the possession of drug paraphernalia conviction. The court ordered that the effective nineteen-year sentence be served consecutively to the offenses for which his parole was revoked. The court found that confinement was necessary to protect society by restraining the Defendant, who had a long history of criminal conduct. The court found confinement was also necessary because less restrictive measures than confinement had frequently or recently been applied unsuccessfully to the Defendant. The court found that probation was unsuccessful and that prison did not deter the Defendant from committing criminal offenses. It found that the Defendant returned to selling drugs almost immediately after receiving parole.

The Tennessee Supreme Court adopted a new standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Currently, the length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 708. In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the

sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.*

The record shows that in determining the Defendant's sentence, the trial court considered the appropriate factors and circumstances. The court placed great weight on the Defendant's criminal history and his previous failures to comply with the conditions of release. The Defendant had previous convictions for numerous drug possessions, including cocaine, aggravated robbery, assault, and driving under the influence. Most significant, the Defendant was on parole at the time the present offenses were committed. Regarding the Defendant's claim that the court did not give proper weight to the mitigating and enhancement factors, the present Sentencing Act does not permit such a claim on appeal. *See State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The sentence was within range, and the record shows that the court did not abuse its discretion. The Defendant is not entitled to relief.

### III

The Defendant contends that the trial judge erred by failing to recuse himself from presiding over the suppression hearing because he issued the search warrant. The State responds that the trial court did not abuse its discretion by denying the Defendant's request. We agree with the State.

As a preliminary matter, we note that the Defendant's motion to recuse is not included in the appellate record. No evidence was presented at the hearing, although the trial court heard counsel's arguments. The Defendant challenged the credibility and reliability of the confidential informant and argued that because the judge determined the credibility of the informant when deciding to issue the search warrant, the judge would not be willing to determine that the warrant was invalid.

The trial court denied the motion to recuse. It stated that the Defendant's logic was flawed because trial judges were asked to review their previous rulings on other matters, including whether to grant a motion for a new trial. It stated that the judicial system was based on the notion that trial judges review their own rulings for mistakes and erroneous findings. In denying the motion, the court relied on *State v. Hawkins*, 586 S.W.2d 465, 465 (Tenn. 1979), which states that "[i]t has long been provided . . . that the magistrate who issues a search warrant may hear and determine any contests concerning its validity or the grounds upon which it was issued."

A trial judge should grant a motion to recuse whenever his or her impartiality can reasonably be questioned. *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Recusal is "warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge would find a reasonable basis for questioning the judge's impartiality." *Id.* The standard of review on appeal is whether the trial court abused its discretion by denying the motion. *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004); *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993).

At the time the trial court considered the motion to recuse, the Code of Judicial Conduct stated, in pertinent part, that disqualification is required when "the judge's impartiality might be reasonably questioned, including by not limited to instances where the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" Tenn. S.Ct. R. 10, Canon 3.E.(1)(a) (2010). We note that Canon 3.E.(1)(a) has since been amended to revise the section numbers, but the language remains the same as when the trial court considered the motion to recuse. *See* Tenn. S. Ct. R. 10, Canon 2.11(A)(1) (2013). A trial judge "is not disqualified from hearing a case because he or she has knowledge of the facts of the case." *State v. Thornton*, 10 S.W.3d 229, 237 (Tenn. Crim. App. 1999) (citing *State ex rel Phillips v. Henderson*, 423 S.W.2d 489, 492 (Tenn. 1968)). Likewise, a judge "who initially issues a search warrant is not thereafter so interested in the cause as to be disqualified[.]" *Hawkins*, 586 S.W.2d 465.

We conclude that a trial judge's issuing a search warrant would not disqualify the same judge from presiding over the case at a later date. *See Thornton*, 10 S.W.3d at 237. The trial court did not abuse its discretion, and the Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE