# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 19, 2024

## STATE OF TENNESSEE v. ESPERANZA MARIAELENA JOY FLORES

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2021-CR-1055          Kathryn Wall Olita, Judge**

_____

### No. M2024-00188-CCA-R3-CD
_____

A Montgomery County jury convicted Defendant, Esperanza Mariaelena Joy Flores, of driving under the influence ("DUI"), DUI per se, failure to yield to an emergency vehicle, and possession of an open alcohol container. Defendant argues on appeal that: (1) the trial court erred in not dismissing the charges after the State failed to preserve evidence; (2) the trial court improperly limited her cross-examination of a witness; (3) the trial court improperly limited Defendant's testimony; (4) the prosecutor made improper closing argument; (5) the evidence was insufficient to support her conviction for failure to yield to an emergency vehicle; (6) the record was not properly preserved because a court reporter was not provided to transcribe the proceedings; and (7) she is entitled to cumulative error relief. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Christopher G. Clark (on appeal), and Stephanie Ritchie Mize (at trial), Clarksville, Tennessee, for the appellant, Esperanza Mariaelena Joy Flores.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Robert J. Nash, District Attorney General; and Nathaniel J. Sherman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural History

### DUI Investigation and Arrest

On April 2, 2020, Clarksville Police Department ("CPD") Officer Alyssa Wade and another officer were conducting a DUI stop at the intersection of Peachers Mill Road and 101st Airborne Division Parkway in Clarksville. The northbound portion of the roadway consisted of five lanes: two left turn lanes, two lanes going straight through the intersection, and one right turn lane. The driver had fallen asleep at a red light, and that car and the officers' police cruisers were blocking the rightmost straight lane of the roadway, with one cruiser's passenger tires also slightly in the right turn lane. The cruisers' emergency lights were activated.

Around 10:30 p.m., while the officers were conducting standard field sobriety tests ("SFSTs") on the individual, a maroon car passed the other officer's cruiser. Officer Wade clarified at trial that she did not believe the maroon car was speeding, but she believed its speed was excessive under the circumstances. The car nearly struck Officer Wade, who jumped out of the way to avoid being hit. Officer Wade testified at trial that other lanes were open in which the maroon car could have passed the officers. The maroon car stopped and parked. Officer Wade approached the car and spoke with Defendant, the driver.

Officer Wade began to tell Defendant to leave because an investigation was ongoing when she smelled alcohol coming from Defendant's vehicle and her person. Officer Wade noticed that Defendant's eyes were bloodshot and "kind of glossy" and her speech was slurred. An unsealed bottle of Southern Comfort and a container of juice were in the back seat of the vehicle.

Defendant told Officer Wade that she had not seen the blue lights, which was why she came so close to the scene of the investigation. Officer Wade asked Defendant to step out of her vehicle and called for another officer. Officer Wade asked Defendant if she would be willing to perform SFSTs, to which Defendant agreed.

Tennessee Highway Patrol Trooper Michael Hickmon, who at the time was a CPD officer, arrived to conduct SFSTs on Defendant. Officer Hickmon saw the other officers' blue emergency lights from about two hundred feet away as he approached the scene. Officer Hickmon likewise noticed Defendant's bloodshot eyes, slurred speech, and an odor of alcohol. Defendant told Officer Hickmon that she had drunk half a bottle of wine and a shot of Southern Comfort between 7:00 and 10:30 that evening. Defendant also told Officer Hickmon that she had injuries to her back, spine, leg, and hip that could affect her performance on the SFSTs.

Defendant performed poorly on the SFSTs, so Officer Hickmon took her into custody. Officer Hickmon did not observe any "medical limitations" as Defendant walked to his cruiser. Video recordings from Officer Hickmon's body camera and dash camera, reflecting the events occurring since his arrival at the scene, were admitted as an exhibit at trial.

Officer Hickmon transported Defendant to the Montgomery County Jail where he conducted a breath alcohol test on Defendant. Officer Hickmon explained at trial that the CPD used an Intoximeter II EC/IR breathalyzer instrument and explained how the instrument operated. Part of the breath alcohol test involved a twenty-minute waiting period where the officer observed the defendant. Officer Hickmon testified that he and Defendant talked some during the waiting period, but he was focused on her, and that the waiting period went normally. The test results, which were admitted as an exhibit at trial and indicated that the instrument operated normally during Defendant's test, showed that her blood alcohol content ("BAC") was .141 percent.

*Trial, Verdict, and Appeal*

The Montgomery County Grand Jury indicted Defendant for failure to yield to an emergency vehicle, DUI, DUI per se, and possession of an open container of alcohol. The State offered the above proof in its case-in-chief, as well as testimony from Special Agent Robert Miles, III, a forensic scientist for the Tennessee Bureau of Investigation ("TBI"), who testified at trial as an expert in forensics. Special Agent Miles was assigned to the "breath alcohol section" of the TBI crime laboratory, which involved calibrating Intoximeter instruments throughout Middle Tennessee. Special Agent Miles explained to the jury how the instruments work. He verified that he personally calibrated the instrument used by Defendant on February 26, 2020, and recertified it as accurate on May 26, 2020. Special Agent Miles further testified that a person burping or belching would not affect the test results, and that reflux would not affect a person's test results because the instrument takes two breath samples.

Dr. Ronald Henson testified for the defense as an expert in forensic science. Dr. Henson expressed reliability concerns about instruments like the Intoximeter EC/IR II used here. He alleged that electrical interference from electric appliances, cell phones, and body cameras could cause "erratic readings." Newer models of the instrument have been updated, he explained, to ameliorate the effects electrical interference might have. Dr. Henson also opined that the generation of breath alcohol instruments like the Intoximeter EC/IR II could not accurately mitigate "mouth alcohol" or "residual alcohol" in a person's mouth that would cause the instrument to read higher than a person's true blood alcohol content, especially if the person had gastroesophageal reflux disease ("GERD"). Newer

generations of the instruments, he said, have addressed this problem. He conceded on cross-examination, though, that he had not examined the Intoximeter EC/IR II instrument used in this case and had only seen photographs of it. Dr. Henson also disagreed with Special Agent Miles' use of the word "calibrate"; Dr. Henson took that to mean that the instrument had fallen out of accuracy and was adjusted to be accurate.

Dr. Henson opined that Officer Hickmon improperly conducted the SFSTs given Defendant's injuries. Dr. Henson therefore concluded that the SFSTs did not accurately reflect whether Defendant was under the influence of alcohol.

Defendant testified about her extensive medical history, the injuries and surgeries she had dealt with, and how they affected her ability to walk and balance. She specifically testified that her knee and hip problems made her unable to stand on one leg for very long, and that her postural orthopedic tachycardia syndrome made it difficult for her to balance well at all. She joked that "you couldn't pay [her] to walk a straight line" because of her injuries and conditions. She claimed that despite telling Officer Hickmon about her conditions, she performed the SFSTs anyway because she "didn't know [she] had a choice."

Defendant explained that she and her passenger Anthony[1] had dinner and were on their way to his house when they had stopped at a liquor store. At the store, she bought three bottles of wine. They had also stopped at a gas station, where she bought Sprite, cigarettes, and lime juice. The Southern Comfort that Officer Hickmon removed from her back seat, she explained, belonged to Anthony. Defendant said that she and Anthony built a fire in his backyard, where they drank "wine spritzers," Sprite, and lime juice. Altogether, she testified, she drank half a bottle of wine. She later had a shot of Southern Comfort because her allergies were bothering her. At some point, they left Anthony's house for Defendant's.

Defendant recounted her approach to the ongoing investigation when she reached the intersection of Peachers Mill and 101st Airborne. She testified that she saw two patrol cars with their emergency lights on. She stated that she "didn't know if it was an accident or what was going on." She said she slowed down, turned her radio down, and "didn't see a reason [she] couldn't go, so [she] proceeded to the [right] turning lane," which she claimed was not blocked. She conceded on cross-examination that one of the cruisers' passenger-side tires were "protruding" into the right turn lane. She did not see any cones, flares, or anyone directing her away from the ongoing investigation.

---

[1] Anthony's last name is not in the record.

In contrast to Officer Wade's testimony, Defendant claimed that Officer Wade walked into the right turn lane, and Defendant stopped when she saw Officer Wade. Defendant testified that Officer Wade was wearing a "really dark" uniform with no reflective gear. Defendant rolled down her window to apologize to Officer Wade, who "appeared angry."

Defendant testified that she "felt fine" when she left Anthony's house and did not believe she was in a condition where she should not drive. After Officer Hickmon arrested her, he took her to the Montgomery County Jail where she performed the breath alcohol test. Defendant disagreed with Officer Hickmon's testimony that he focused on her during the twenty-minute waiting period; she claimed that he talked with another officer and worked on paperwork.

Relevant to the breath alcohol test, Defendant claimed that she suffered from GERD and acid reflux that made her "constantly burp" and sometimes regurgitate. Defendant testified she had eaten something that evening that upset her stomach. She believed that her stomach was upset when she conducted the breath alcohol test.

Special Agent Miles testified in rebuttal for the State. He explained that he used the word "calibrate" to convey that he ensured the instrument's accuracy. If an instrument failed the calibration process, then an "adjustment" would be required, he testified. Special Agent Miles said that checking for electrical interference was part of his calibration process, and the instrument ran a diagnostic test weekly to ensure its accuracy. The State introduced a logbook of every breath alcohol test conducted on the instrument between February 26, 2020, when Agent Miles last calibrated the instrument before this incident, and May 26, 2020, when he next calibrated it. Special Agent Miles said that nothing in the logbook concerned him and expressed his opinion that the instrument was "in working order and working properly" between his calibrations.

Special Agent Miles explained that "gastric distress" would cause a larger variance between the breath samples than what occurred here. The difference between Defendant's samples was .002, which did not lead Special Agent Miles to believe that "mouth alcohol" was a factor here. Special Agent Miles maintained that the result would not be different if Defendant burped between giving her breath samples and that a variance of .02 (which Defendant's samples were well below) between the samples would indicate "two good tests."

The jury convicted Defendant as charged in the indictment. The trial court merged the DUI convictions and sentenced Defendant to an effective eleven months and twenty-nine days, suspended after two days' incarceration. Defendant appeals.

*Analysis*

Defendant raises several issues for our review on appeal. She argues that: (1) the trial court erred in not dismissing the charges after the State failed to preserve evidence; (2) the trial court improperly limited her cross-examination of a witness; (3) the trial court improperly limited Defendant's testimony; (4) the prosecutor made improper closing argument; (5) the evidence was insufficient to support her conviction for failure to yield; (6) the record was not properly preserved because a court reporter was not provided to transcribe the proceedings; and (7) she is entitled to cumulative error relief. We examine each issue in turn.

*Preservation of Evidence*

Defendant first argues that the trial court erred in not dismissing the indictment because Officer Wade's body camera recordings were not preserved. The State argues that this claim is waived because Defendant did not request dismissal in the trial court and, alternatively, that the trial court properly instructed the jury as to lost or destroyed evidence.

"Every criminal defendant is guaranteed the right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the 'Law of the Land' Clause of Article I, section 8 of the Tennessee Constitution." *Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). "To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment." *State v. Ferguson*, 2 S.W.3d 912, 915 (Tenn. 1999); *see Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In *Ferguson*, our supreme court addressed "the factors [that] should guide the determination of the consequences that flow from the State's loss or destruction of evidence which the accused contends would be exculpatory." *Ferguson*, 2 S.W.3d at 914. First, a reviewing court must determine whether the State had a duty to preserve the lost or destroyed evidence. *Id*. at 917. "For this duty to arise, the [evidence] must be expected to play a significant role in [the defendant's] defense." *State v. Merriman*, 410 S.W.3d 779, 792 (Tenn. 2013). "Specifically, [the evidence] must have potential exculpatory value and be of such a nature that [the defendant] would be unable to obtain comparable evidence by other reasonably available means." *Id*.; *State v. Crass*, 660 S.W.3d 506, 513 (Tenn. Crim. App. 2022).

If the trial court concludes that the State lost or destroyed evidence that it had a duty to preserve, the trial court must then consider three factors to determine the appropriate remedy for the State's failure: (1) the degree of negligence involved; (2) the significance

of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction. *Ferguson*, 2 S.W.3d at 917; *Merriman*, 410 S.W.3d at 785. "If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Merriman*, 410 S.W.3d at 785-86. This Court reviews a trial court's decision concerning the fundamental fairness of a trial under a de novo standard. *Id.* at 790. However, we review the trial court's remedy under an abuse of discretion standard. *Id*.; *Crass*, 660 S.W.3d at 514.

We first address the State's waiver argument. The record shows that when Defendant raised the *Ferguson* issue in the trial court, she asked only for the trial court to limit Officer Wade's testimony as to the failure to yield charge or to instruct the jury on lost or destroyed evidence. Defendant did not request dismissal until her motion for new trial. Defendant acknowledges in her principal brief that "[t]he trial court was only asked to exclude Officer Wade's testimony regarding [the failure to yield charge]," yet maintains that all her charges should be dismissed. Defendant asked for, and the trial court gave, an instruction on lost or destroyed evidence. Defendant cannot request one remedy in the trial court and a different remedy in this Court. This issue is waived. *See State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) ("When . . . a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for new trial and in this Court, the party waives the issue.").

*Limitation of Cross-Examination*

Defendant argues that the trial court improperly limited her cross-examination of Officer Hickmon by prohibiting her from exploring whether he properly observed Defendant during the twenty-minute observation period. The State contends that the trial court properly limited Defendant's speculative question.

Cross-examination is a fundamental right. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). That said, the propriety, scope, manner, and control of cross-examination are within the trial court's discretion. *State v. Echols*, 382 S.W.3d 266, 285 (Tenn. 2012); *see also State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). "This Court will not disturb the limits placed upon cross-examination by the trial court, unless the trial court has unreasonably

restricted the right." *State v. Gentry*, 538 S.W.3d 413, 429 (Tenn. 2017). "When a defendant is denied the right to conduct an effective cross-examination, the conviction will stand only if the violation is deemed harmless beyond a reasonable doubt." *Echols*, 382 S.W.3d at 285 (citing *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008)); *see also* Tenn. R. App. P. 36(b).

Defense counsel questioned Officer Hickmon on cross-examination about his observation of Defendant during the twenty-minute period before she gave her breath samples. Officer Hickmon said that he was in the room the entire twenty minutes with Defendant. He did not work on paperwork but spoke some with Defendant and another officer in the room. Defense counsel asked, "Isn't it possible that at any point when you were talking to [the other officer], that [Defendant] could have burped or—" when the State objected to speculation. The trial court sustained the objection. Officer Hickmon could not specifically recall whether his eyes were on Defendant for the entire twenty-minute period but maintained that he observed her carefully and did not have a "full-on conversation with the other officer." Nothing happened in the twenty minutes that led Officer Hickmon to believe that Defendant had regurgitated or had anything in her mouth. We agree with the State that Defendant's question whether it was possible that Defendant burped called for speculation. The trial court did not abuse its discretion in sustaining the State's objection.[2] Defendant is not entitled to relief on this issue.

*Limitation of Defendant's Testimony*

Defendant contends that the trial court improperly limited her testimony by prohibiting her from testifying that she was a disabled veteran and that her injuries stemmed from her military service. The State argues that Defendant has waived this issue by failing to make an offer of proof on the matter, and alternatively that the trial court properly limited her testimony because the source of her injuries was not relevant. We agree with the State.

We first address the State's waiver argument. When a trial court excludes evidence, the party seeking its admission must make an offer of proof as to the substance of the evidence and the specific evidentiary basis supporting its admission. Tenn. R. Evid. 103(a)(2). "In order for an appellate court to review a record of excluded evidence, it is fundamental that such evidence be placed in the record in some manner. . . . When . . . it consists of oral testimony, it is essential that a proper offer of proof be made in order that

---

[2] To the extent Defendant raises a violation of *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992), this claim is waived for failure to move to suppress the results of the breath alcohol test in the trial court. *See* Tenn. R. App. P. 36(a).

the appellate court can determine whether or not exclusion was reversible." *State v. Goad*, 707 S.W.2d 846, 852-53 (Tenn. 1986). Failing to make an offer of proof regarding the substance of excluded evidence results in waiver on appeal. *State v. Sims*, 45 S.W.3d 1, 15 (Tenn. 2001); *see also State v. McCaleb*, 582 S.W.3d 179, 199 (Tenn. 2019). Defendant made no offer of proof when the trial court granted the State's motion to exclude testimony about the sources of Defendant's injuries. This issue is waived for our consideration. Defendant is not entitled to relief.

*Improper Closing Argument*

Defendant asserts that the prosecutor made an improper argument when he argued in closing that "everyone" uses the road at issue in this case. The State argues that this claim is waived because Defendant did not object to this argument in the trial court; alternatively, that the argument was proper. We agree with the State that this claim is waived.

Our supreme court "has long held that a defendant's failure to contemporaneously object to alleged prosecutorial misconduct during closing argument results in waiver of the issue on appeal." *State v. Enix*, 653 S.W.3d 692, 700 (Tenn. 2022). "[P]lain error review is the appropriate standard of review to apply to claims of alleged prosecutorial misconduct during closing argument when no contemporaneous objection was lodged at the time of the alleged misconduct but the claim is raised in the motion for new trial." *Id.* at 700-01.

The record here reflects that Defendant did not object during closing argument on this point but raised it in her motion for new trial. Plenary review of this issue is therefore waived. *Id.* at 700. Despite the State's briefing a plain error analysis, Defendant did not request that we review this issue for plain error in her principal brief, nor did she file a reply brief. We decline to conduct a plain-error analysis where Defendant has not requested one. *See State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 455193, at *5 (Tenn. Crim. App. July 14, 2023) ("[O]nly particularly compelling or egregious circumstances could typically justify our *sua sponte* consideration of plain error relief."), *no perm. app. filed*. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Defendant argues that the evidence is insufficient to support her conviction for failure to yield to an emergency vehicle because the proof did not establish that the police cruisers' emergency lights were activated. Defendant challenges the sufficiency of no other conviction, and challenges only this aspect of her failure to yield conviction. The State counters that the evidence is sufficient, and we agree.

- 9 -

When examining whether the evidence presented at trial was sufficient to support a conviction, several well-settled principles guide our analysis. We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The defendant bears the burden on appeal to demonstrate that the evidence is insufficient to support his conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"[A] jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled on appeal to "the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Questions as to the credibility of witnesses and the weight of the evidence, as well as factual issues raised by such evidence, are resolved by the trier of fact, not this Court. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). These principles guide us "'whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

As charged here, the State had to prove that: (1) there was a stationary emergency vehicle; (2) the vehicle was giving a signal by use of flashing lights; (3) Defendant was driving an approaching vehicle; and (4) Defendant failed to proceed with due caution by reducing the speed of her vehicle and maintaining a safe speed for road conditions if changing lanes was impossible or unsafe. *See* T.C.A. § 55-8-132(b)(2).

In the light most favorable to the State, the proof showed that Officer Wade and another officer were in the process of a DUI investigation at the intersection of Peachers Mill Road and 101st Airborne Division Parkway in Clarksville. Their cruisers were parked in the roadway with their emergency lights flashing, and one cruiser's passenger tires protruded slightly into the right turn lane. Defendant came upon the scene and attempted to drive past in the right turn lane between the cruiser and the curb, nearly striking Officer Wade, who had to jump out of the way to avoid being hit. Even if Defendant was not speeding, Officer Wade testified that Defendant's speed was excessive under the circumstances and that other lanes were available for her to pass by the scene. This proof

was sufficient to sustain Defendant's conviction for failure to yield to an emergency vehicle.

Contrary to Defendant's contention on appeal, there was proof offered at trial to establish that the cruisers' emergency lights were activated. Officer Wade testified that the cruisers' emergency lights were activated when Defendant arrived at the scene. Defendant herself conceded on cross-examination that the cruisers' emergency lights were activated when she approached the scene. This issue is without merit and Defendant is not entitled to relief.

### Court Reporter

Defendant argues that the record was not properly preserved because a court reporter was not provided for her trial.[3] The State argues that this claim is waived because the record does not indicate that Defendant requested a court reporter before trial and because she makes no citations to the record in her argument on this issue; alternatively, the trial court was not required to provide a court reporter in this misdemeanor case. We agree with the State that this claim is waived.

The record here contains no filing from Defendant requesting a court reporter, no transcript from a hearing on the matter, nor an order from the trial court regarding a request for a court reporter. The first mention of a lack of a court reporter is in Defendant's motion for new trial. As the appellant, it was Defendant's burden to prepare an adequate record for resolution of the issues if she requested a court reporter. *See State v. Rimmer*, 623 S.W.3d 235, 296 (Tenn. 2021) (citing *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993)) (appendix). Perhaps tellingly, Defendant's argument on this issue includes no citations to the record. This issue is waived for our consideration. *See* Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by . . . appropriate references to the record will be treated as waived in this court."). Defendant is not entitled to relief on this issue.

### Cumulative Error

The cumulative error doctrine recognizes that multiple errors may exist in a trial that are harmless standing alone but implicate a defendant's right to a fair trial when aggregated. *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). We find no single error on

---

[3] The technical record contains three volumes of trial transcripts which indicate that they were "Transcribed from Audio Provided by Counsel."

- 11 -

the trial court's part, much less multiple.  Defendant is not entitled to cumulative error relief.

## CONCLUSION

For the reasons discussed above, we affirm the judgments of the trial court.

s/ Timothy L. Easter                              
TIMOTHY L. EASTER, JUDGE